IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 2:19-cr-00010
        District Judge William L. Campbell, Jr.

GILBERT R. GHEARING,

        Defendant.

**MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT**

NOW COMES Defendant Gilbert Ghearing, M.D. ("Dr. Ghearing"), by and through counsel, and respectfully files this Motion to Dismiss for Violation of the Speedy Trial Act. In support thereof, he states as follows.

**I.    The Strategic Denial of Dr. Ghearing's Right to a Speedy Trial**

    a.   *The First Delay*

On January 28, 2022, the Government filed a motion to continue the April 2022 trial date as a result of the pending Supreme Court decision in *Ruan v. United States*. [ECF 78]. Its motion came nearly ninety (90) days after the widely publicized petition in *Ruan v. United States* was granted and lacked any support for the argument that the Defendant's right to a speedy trial gives way to cases pending before the Supreme Court. To be fair, the Government did cite three (3) cases in support of its motion – none of which were helpful. In *United States v. Chhay Lim*, 2019 WL 2924133 (E. La. July 8, 2019) the defendant filed a motion to continue trial due to the pending Supreme Court decision in *Rehaif*. In *United States v. Orozco*, 2016 WL 2781838 (N.D. Ill. June 19, 2014) both the government and defendant filed a joint motion to continue trial due to the

Supreme Court decision in *Booker*. In *United States v. Martin*, 742 F.3d 512, 514 (9th Cir. 1997) the defendant agreed to a continuance pending an "entirely dispositive" Supreme Court decision.

Ostensibly, the Government searched for but could not find any binding (or even non-binding) appellate precedent that supports the notion that a Defendant's right to a speedy trial gives way to pending Supreme Court Cases. None exists. If this were true, the wheels of justice would move in fits and starts while the Supreme Court wrestles with complex issues that may or may not be dispositive. Indeed, suspending prior Sixth Circuit Precedent with the hope that the Supreme Court will decide an issue turns the concept of *stare decisis* on its head.

On February 4, 2022, Defendant filed a response to the motion to continue vehemently contesting continuance of trial "Dr. Ghearing does not waive his 6th Amendment right to a Speedy Trial for the reasons set forth in the Government's most recent filing found at ECF 78". [ECF 80, Page ID 229].

On February 18, 2022, the Court granted the Government's motion to adjourn and excluded the delay under the speedy trial act in the interests of justice. [ECF 87].

    b. <u>The Second Delay</u>

After having sought a seven (7) day continuance of trial to investigate the alleged alteration of medical records by Dr. Ghearing, the government did nothing. It didn't file a motion *in limine* to introduce evidence. It didn't file a subsequent motion to continue trial for more time to investigate the issue. It didn't even give the Defendant the courtesy of indicating it intended to raise the issue at the final pretrial conference. And it certainly didn't draft a brief highlighting the issue for the court, permit the Defendant to review the evidence, or draft a brief in response to the introduction of evidence of alleged tampering.

What it did do, in the final moments of the final pretrial conference, was make an *oral* motion to admit evidence that Dr. Ghearing "altered records". Ambushing the Defendant with its motion, it made no offer of proof showing the alterations, the falsity of the alterations, or that the alterations resulted in any sort of obstruction. As the Court correctly pointed out, the Government had the records in questions since at least October 2021, more than ten (10) months before the trial date.

This Court denied the Government's motion to introduce evidence of alteration on September 8, 2022. *See* Order, ECF No. 158.

The Government filed its interlocutory appeal on September 8, 2022, and certified to the Court that the appeal was "not for the purpose of delay". Based on the Government's conduct during the final pretrial conference – we all knew different. And based on its conduct subsequent to the filing of the appeal – we can be absolutely certain.

Having the benefit of time coerced by the filing of its interlocutory appeal, the Government ran to the grand jury to do something it did not have the time to do with the impending September 9, 2022, trial date – it secured an indictment for the conduct complained of in its oral motion.

Having secured a superseding indictment, the Government then attempted to moot its appeal and remand for trial, now with a clear shot of introducing evidence it was prevented from introducing as a result of its dilatory and unsavory tactics. The Government has engaged in gamesmanship and the effect stripped Dr. Ghearing of his most fundamental right- the right to a speedy trial.

## II. Relevant Law

The Speedy Trial Clause of the Sixth Amendment protects against undue delay in taking a defendant to trial. The Speedy Trial Act of 1974 eclipses and bolsters this protection.

The Supreme Court has specified four factors for evaluating a Sixth Amendment speedy-trial claim: 1) length of delay, 2) reason for the delay, 3) the defendant's assertions of his right, and 4) prejudice to the defendant. *Barker*, 407 U.S. at 530. None of the factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," but the factors are related and "must be considered with such other circumstances as may be relevant" in "a difficult and sensitive balancing process." *Id*. at 533.

In addition to the guarantees of the Sixth Amendment, the speedy trial act provides the government seventy (70) days to take the case to trial. 18 U.S.C. §§ 3161-3174. Exceptions are granted to this requirement in "ends of justice" and for the purpose of an interlocutory appeal. The Act expressly mandates that no interests-of-justice continuance shall be granted for the following reasons: "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C).

A Defendant may establish a prima facie case that the government has violated the Speedy Trial Act by showing that he was not brought to trial within the seventy (70) day period. *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). The defendant bears the burden of proof to show a violation warranting dismissal. 3162(a)(2). Where a defendant was not brought to trial within seventy (70) days, the Speedy Trial Act requires dismissal. *United States v. Tinklenberg*, 563 U.S. 647 (2011) (Affirming the Sixth Circuit's dismissal of an indictment for violation of the strict 70-day speedy trial clock).

The Government greatly exceeded the seventy (70) day speedy trial clock as a result of two (2) delays for which there is no exception, 1) delaying a trial while the Supreme Court was pending a decision in *Ruan v. United States*, and 2) delaying trial in bad faith by filing an interlocutory

appeal and a request for a stay predicated upon an interlocutory appeal of an *oral* motion made after the deadline for motions in *limine* – solely for the purpose of securing a superseding indictment.

A proper remedy for a violation of the Defendant's speedy-trial rights is dismissal of the indictment with prejudice. *See United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) (*citing United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007). In fact, the United States Supreme Court has held that dismissal is "the only possible remedy". *Strunk v. United States*, 412 U.S. 434, 439-40 (173) (*quoting Barker v. Wingo*, 407 U.S. 513, 522 (1972)).

The indictment and superseding indictment must be dismissed with prejudice for violation of the Speedy Trial Act and the Sixth Amendment.

**III.** *Barker v. Wingo* **Factors**

a. <u>Length of the Delay</u>

The Government's prolonged delays in this case greatly exceed the seventy (70) days it has to bring a case to trial under the Speedy Trial Act. 18 U.S.C. § 3161-3174; *see United States v. Tinklenberg*, 563 U.S. 647 (2011) (Affirming the Sixth Circuit's dismissal of an indictment for violation of the strict seventy (70) day speedy trial clock). In fact, as evidenced by the chart below, the Government's non-excusable delay has tallied up to a total of three hundred fifteen (315) days.

| Case Activity | ECF | Date | Accrued Days of Delay | Accrued Properly Waived Days | Reason for Delay |
|---|---|---|---|---|---|
| Indictment | 19 | 6/12/2019 | | | |
| Speedy Trial Waiver | 55 | 7/22/2020 | | | Interests of justice |
| Order to Continue trial to 9/8/2020 | 56 | 7/23/2020 | | | Interests of justice |
| Trial Date | 56 | 6/8/2021 | 727 | 727 | Interests of justice |
| Order to Continue Trial to 9/7/2021 | 62 | 4/13/2021 | | | Interests of justice |
| Trial Date | 62 | 9/7/21 | 818 | 818 | Interests of justice |
| Order to Continue Trial | 71, 74 | 7/20/21 | | | The Government identified inconsistencies in documents it produced and discovery was incomplete |
| Trial Date | 74 | 4/5/22 | 1058 | 1058 | |
| Order to Continue Trial | 87 | 2/18/2 | | | Interests of justice over defense objection as a result of *Ruan v. United States* |
| Trial Date | 87 | 9/6/22 | 1212 | 1058 | |
| Order to Continue Trial | 147 | 8/22/22 | | | Government requested additional time to investigate the alteration of medical records. |
| Trial Date | 147 | 9/13/22 | 1219 | 1058 | |
| Stay of Trial Pending Appeal | 159 | 9/12/22 | | | Government filed an interlocutory appeal of an oral motion made at a final pre-trial conference after the date required for motions in *limine*. The appeal was made in bad faith and later abandoned by the Government after it obtained a superseding indictment. |
| Superseding Indictment | | 10/12/2022 | 1248 | 1058 | |
| Motion to Remand | 9 | 11/7/2022 | 1274 | 1058 | |
| New trial Date | 183 | 2/14/23 | 1373 (315) | 1058 | |

### b. *Reason for the Delay*

The Speedy Trial Act of 1974 excludes delay resulting from interlocutory appeal. 18 U.S.C. § 3161(h)(1)(C). However, it does not exclude time for a frivolous appeal, or one taken in bad faith. *United States v. Loud Hawk*, 474 U.S. 302 (1986). In *Loud Hawk*, the Supreme Court makes clear that it is improper for the prosecution to intentionally delay to "gain some tactical advantage over defendants or to harass them". *Id*. at 316 *Citing*, *Barker v. Wingo*, 407 U.S. 514 FN 32 (1972). Delays resulting from an interlocutory appeal will be judged by the *Barker* factors, of which the second – the reason for the appeal – is the most important. *Id*.

In *Loud Hawk*, the Government immediately filed an interlocutory appeal after the District Court ordered the suppression of dynamite in a firearms and explosives case. 474 U.S. at 304-10. The Court of Appeals reversed the suppression order and remanded the case for trial. *Id*. The Supreme Court was asked to determine if an interlocutory appeal tolls the speedy trial clock and the Court answered by applying the *Barker* factors, finding in favor of the government. *Id.* at 310-16. In so finding, the Supreme Court reiterated its statement in *Barker v. Wingo*, that "a deliberate attempt to delay the trial in order to hamper the defense," would be weighed heavily against the government. *Id*. (*citing Barker*, 407 U.S. at 531). The Court determined that the strength of the government's position on the appealed issue, the importance of the issue in the posture of the case, and in some cases the seriousness of the crime is important. *Hawk*, 474 U.S. 302, 315. The Court stated, "a delay resulting from an appeal would weigh heavily against the government if the issue were clearly tangential or frivolous […] moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of appeal." *Id*.

Here, the Government filed its notice of its interlocutory appeal on September 7, 2022, following the Court's decision to exclude evidence of the alteration of medical records for patients in the indictment. ECF 153, at 1. It did so based entirely on its oral motion seeking to introduce these patient records, failing to develop the record for review from the Sixth Circuit. Then, instead of filing a supportive brief before the Sixth Circuit, the Government requested remand of the proceedings, but not before it obtained its superseding indictment, adding charges under 18 U.S.C. §§ 1503 & 1519 for allegedly altering medical records. ECF 164, at 14-16. The Government had no intentions of releasing Dr. Ghearing from purgatory until it had its superseding indictment in hand. *See* 22-5787, ECF 7 (Government's motion to extend time to file appellate brief by thirty (30) days). Unlike *Loud Hawk*, where the Government's actions reflected the import of its interlocutory appeal, such that it filed written motions to develop the record in district court and filed an appellate brief before the Ninth Circuit, the Government in this case undermined the gravity of its interlocutory appeal wherever it could. *Cf.* 474 U.S. at 316 (finding "the reversals by the Court of Appeals [in this case] are prima facie evidence of the reasonableness of the Government's action.").

Frankly, the Government's actions on their face undermine any inference of sincerity for bringing their interlocutory appeal. *See e.g.*, *United States v. Becerra*, 435 F.3d 931, 934-36 (8th Cir. 2006) (finding the Government had no good reason for violating the Speedy Trial Act where it sought to continue trial to file a superseding indictment it could have pursued earlier).[1] An inference of sincerity is then further undermined by the Government's earlier dilatory efforts. Specifically, prior to its frivolous interlocutory appeal, the Government sought to further delay

---

[1] The Eighth Circuit dismissed the second superseding indictment but did not dismiss the initial indictment given the *brief* delay caused by the Government, such that trial was delayed from the week of October 18, 2004, to October 25, 2004. *Becerra*, 435 F.3d at 933, 937. Here, the delay was much more significant.

trial by referencing the then-pending Supreme Court case, *Ruan v. United States*. While there is no authority to support the Government using a pending Supreme Court case to infringe on the Speedy Trial Act, the Government delayed trial by an additional five (5) months. ECF 87. Surely, during the pendency of this extensive delay, the Government could have investigated medical records and filed a motion before this Court seeking to admit these records. Rather, the Government sought another continuance, further delaying trial, failing to file anything on the docket, and instead, opting to make an *oral* motion to admit evidence of "altered records" in the final moments of the final pretrial conference. *See United States v. Young*, 657 F.3d 408, 417 (6th Cir. 2011) (recognizing delay from disorganization should be attributed to the government) (citing *Vermont v. Brillon*, 556 U.S. 81, 94 (2009)).

The Government is afforded a significant amount of leeway to decide what charges to bring against a defendant and when to do so. It may not, however, violate a defendant's rights under the Speedy Trial Act. *See Berger v. United States,* 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all… while he may strike hard blows, he is not at liberty to strike *foul* ones."). Here, the Government did so, not only with its frivolous interlocutory appeal, but by also improperly delaying trial during the pendency of *Ruan v. United States*.

### c. *The Defendant's Assertion of his Rights*

Dr. Ghearing asserted his right to a speedy trial under the Act. Specifically, on February 4, 2022, Dr. Ghearing filed a response to the Government's motion to continue trial, vehemently contesting further delaying trial. ECF 80, at ("Dr. Ghearing does not waive his 6th Amendment right to a Speedy Trial for the reasons set forth in the Government's most recent filing ECF 78".

[ECF 80 , Page ID 229]). *See Barker*, 407 U.S. at 531-32 (holding "[t]he defendant's assertion of his speedy trial right [] is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.").

Dr. Ghearing also moved for bail at the outset of this case. *See Redd v. Sowders*, 809 F.2d 1266, 1270-71 (6th Cir. 1987) (affirming "[t]his court has held that a request for reduction of bail is equivalent to a request for a speedy trial." (citation omitted)). Further, he abstained from filing frivolous pretrial motions which would serve to prolong his trial. *Cf. Loud Hawk*, 474 U.S. at 314 (finding defendant's frivolous petitions for rehearing and for certiorari consumed six (6) months and weighed against the assertion of their right to a speedy trial). In fact, the only substantive motions Dr. Ghearing filed were five (5) motion *in limine*. ECF 101, 102, 104, 106, 107. Rather, Dr. Ghearing did everything within his power to try to move pretrial proceedings along so that he could start trial as soon as possible. *Cf. United States v. Munoz Franco*, 112 F. Supp. 2d 204, 215-16, 222 (D.P.R. 2000) (finding defendants demonstrated a lack of enthusiasm for a speedy trial where the docket contained seven hundred twenty (720) entries, many of which were defense motions).

Equally important, the fact that Dr. Ghearing previously moved to continue trial due to the availability of counsel, is not dispositive under this third factor, and "[t]h[e] court cannot close its eyes to…" the Government's lengthy delays. *See Redd*, 809 F.2d at 1271 (finding defendant's "continuance did not prejudice [] [him] in his assertion of the right to a speedy trial.").

Dr. Ghearing has therefore timely and properly asserted his right to a speedy trial under the Speedy Trial Act and this factor should weigh in his favor.

### d. *Prejudice to Dr. Ghearing*

The prejudice caused by a delay should be assessed in light of the interests which the speedy trial is designed to protect. *Redd*, 809 F.2d at 1272. The Supreme Court has identified the three (3) principal interests: 1) to prevent oppressive pre-trial incarceration; 2) to minimize anxiety and concern of the accused; 3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The third factor, damage to a defendant's defense at trial, is the "most serious". *Id*. However, an affirmative showing of prejudice is not necessarily a prerequisite to establishing a speedy trial violation. *Id*. at 533.

While Dr. Ghearing was released on bail pending his trial, aspects of his personal and professional life have suffered, and significantly so. Regarding his personal life, Dr. Ghearing has been encumbered by the restrictions set forth as part of his conditions for release pending trial. These conditions have also negatively impacted his family's quality of life, infringing on their ability to freely spend time with, and make memories with, Dr. Ghearing. *See* ECF 16, at 2-3 (forbidding Dr. Ghearing from traveling). Professionally, Dr. Ghearing's medical practice has been significantly hindered by the requirement that he surrender his DEA registration to prescribe controlled substances. *Id*. Indeed, as a practitioner with a focus on pain medicine, Dr. Ghearing continues to hemorrhage patients form his practice as he is unable to prescribe his patients the controlled substances they require. This not only impacts Dr. Ghearing and his ability to support his family, but it also adversely affects his patients, many of whom Dr. Ghearing has built significant physician-patient relationships with over a period of many years. *See Barker*, 407 U.S. at 532 (recognizing the loss of a job, disruption of family life, and enforcement of idleness are relevant considerations).

Understandably, a defendant facing criminal prosecution suffers a great deal of psychological anxiety and concern as he awaits the outcome of his criminal trial. *See Id.* at 533 (recognizing "…even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."). This cloud, however, has only grown even more inauspicious today, as compared to when *Barker* was decided in 1972. Indeed, with the advent of social media, together with the proliferation of the internet, those facing prosecution are reminded, on a daily basis, of the consequences that loom over their heads. Every day, new stories are published on social media websites as well as legacy media websites, describing the horrors that await in prison. The speed with which information is disseminated through these mediums also draws more attention to criminal defendant's themselves, ostracizing them and their families. There is no question that defendants today face a crippling amount of anxiety and concern. *See* Phil Reed, *Anxiety and Social Media Use,* Psychology Today (February 3, 2020). [2]

Any anxiety is then further exacerbated by the fact that Dr. Ghearing faces a significant amount of time in prison if he is found guilty. Specifically, Dr. Ghearing faces up to twenty (20) years of imprisonment. *See* ECF 164-1, at 1. Twenty (20) years for Dr. Ghearing, who is sixty-eight (68) years old and turns sixty-nine (69) next month, may very well equate to a life sentence, and likely will. *See Burkett v. Fulcomer*, 951 F.2d 1431, 1442 (3d Cir. 1991) (recognizing the inordinate anxiety a defendant faces as he awaits his sentence or disposition of his case, along with the great deal of anxiety resulting from not knowing the extent of time to be served in prison).

The Government's violation of the Speedy Trial Act has also hindered Dr. Ghearing's ability to defend himself at trial. Unlike the Government, Dr. Ghearing does not have access to

---

[2] https://www.psychologytoday.com/us/blog/digital-world-real-world/202002/anxiety-and-social-media-use

limitless resources, and the longer the Government drags his case on for, the more expensive his trial becomes. This is especially true in light of the excessive pretrial motions the Government has filed, together with the added pretrial hearings spawning from the Government's continued delay. Denying Dr. Ghearing his limited resources to defend himself at trial, by requiring him to fight against a frivolous interlocutory appeal, undermines his right to Due Process. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 145 (2006) (holding Due Process under the U.S. Constitution guarantees a defendant the right to a fair trial); *Barker*, 407 U.S. at 532 (affirming the inability for a defendant to adequately prepare his case due to delay skews the fairness of the entire justice system).

In fact, the insidious nature of the Government's conduct becomes even more apparent when one considers the no-prescribing condition that is part of Dr. Ghearing's pretrial release. *See* ECF 16, at 2-3. The Government passively sits by, as Dr. Ghearing drains more of his resources trying to support himself and his family amid a struggling economy, while he is prevented from prescribing controlled substances and realizing his full income potential. A savvy tactic, but underhanded, indeed.

Then there is the prejudice suffered from the unavailability of witnesses. *See Redd*, 809 F.2d at 1272 (finding defendant was prejudiced by lengthy delay where it was *possible* that alibi witnesses were no longer available and further prejudiced because defendant was placed in a disadvantageous position in trying to locate such witnesses). Prejudice also occurs where a witness' recall is impaired due to the delay. *See Loud Hawk*, 474 U.S. at 315 (acknowledging diminished witness recall resulting from delay "is a two-edged sword…[because] it is the Government that bears the burden of proving its case beyond a reasonable doubt.").

Since *Loud Hawk* was decided in 1986, however, there are even more pressing concerns than impaired witness recall. Indeed, as alluded to earlier, the advent of social media and proliferation of the internet has lent itself to the widespread dissemination of misinformation. This is a pressing concern for defendants, like Dr. Ghearing, where their case turns on highly specialized and technical knowledge. This is because laypersons, which the jury will almost certainly comprise of, are more willing to accept as true, misinformation that relates to fields of endeavor requiring specialized knowledge and education, like the practice of medicine. *See* Victor Suarez-Lledo, Javier Alvarez-Galvez, *Prevalence of Health Misinformation on Social Media: Systematic Review*, PubMed Central (January 2021),[3] (finding "[t]he prevalence of health misinformation was the highest on Twitter and on issues related to smoking products and **drugs** [, such as **opioids** and marijuana].").

Here, as in *Redd*, 809 F.2d at 1272, there is the very real *possibility* that witnesses are no longer available due to the Government's continued delays. Indeed, the Government filed its initial indictment on June 12, 2019, ECF 19. Both the initial indictment and the superseding indictment include conduct dating back to as early as September 2016. ECF 164, at 5. Surely, given that nearly six (6) and a half years have passed, Dr. Ghearing has been put at a significant disadvantage in trying to locate crucial witnesses for defending himself at trial. *See Redd*, 809 F.2d at 1272. But even if Dr. Ghearing could *theoretically* locate the witnesses he requires for trial, their recall will be limited given that roughly two thousand three hundred seventy five (2,375) days have passed since September 2016. And, while, as the Supreme Court has acknowledged, impaired witness recall is a "two-edged sword", *Loud Hawk*, 474 U.S. at 315, the continued emphasize on the

---

[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7857950/

"opioid epidemic" and resulting death on social media and throughout the internet, means that Dr. Ghearing has suffered significantly more prejudice.[4]

## IV. Conclusion

The Court is not stripped of its power to manage its docket simply because the Government files an interlocutory appeal. Rather, the Court is vested with the authority to determine whether an interlocutory appeal is frivolous, and if so, enforce an appropriate remedy. That remedy is dismissal. *See United States v. Tinklenberg*, 563 U.S. 647 (2011). Here, the *Barker v. Wingo* factors support that the Government improperly delayed trial and violated Dr. Ghearing's rights under the Speedy Trial Act. Dr. Ghearing therefore respectfully requests the Court dismiss both the Government's initial indictment as well as its superseding indictment, with prejudice.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: February 6, 2023  /s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
Michigan Bar No. P73179
*Counsel for Defendant Ghearing*
1441 West Long Lake Road, Ste 310
Troy, MI 48098
T: (248) 644-6326
RWChapman@ChapmanLawGroup.com

Dated: February 6, 2023  /s/ *Meggan B. Sullivan*
Meggan B. Sullivan, Esq.
Tennessee Bar No. 33067
*Counsel for Defendant Ghearing*
424 Church Street, Ste. 2000
Nashville, TN 37219
T: (615) 457-0449
MSullivan@ ChapmanLawGroup.com

---

[4] Dr. Ghearing will undoubtedly suffer even more prejudice as more details about his case continue to surface throughout the internet.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the parties involved.

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
Michigan Bar No. P73179
*Counsel for Defendant Ghearing*
RWChapman@ChapmanLawGroup.com