IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 2:19-cr-00010 |
| v. | ) | |
| | ) | Judge Campbell |
| | ) | |
| GILBERT GHEARING | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS
## FOR VIOLATION OF THE SPEEDY TRIAL ACT

The United States of America, by and through undersigned counsel, files this response in opposition to Defendant Gilbert Ghearing's Motion to Dismiss for Violation of the Speedy Trial Act. (DE# 189.) Ghearing's motion identifies two events as bases for seeking dismissal under the Speedy Trial Act and the Sixth Amendment: (1) the interests-of-justice continuance requested by the Government, and granted by the Court on February 18, 2022, due to the Supreme Court's anticipated forthcoming decision in *United States v. Ruan*; and (2) the September 8, 2022, continuance ordered by the Court following the government's notice of interlocutory appeal.

Despite defense counsel's unwarranted vitriol, neither continuance was sought for an improper purpose, such as delay or tactical gamesmanship.[1] With respect to the Speedy Trial Act, the Court has already addressed each of these continuances and correctly concluded that the time periods were excludable under the Act. (*See* DE# 87, 158.) Likewise, as discussed more fully below, Ghearing also has not shown a violation of his Sixth Amendment speedy trial right. Accordingly, the motion to dismiss should be denied in its entirety.

---

[1] Indeed, the motion contains repeated allegations by defense counsel that the government is intentionally engaging in "dilatory and unsavory tactics" that were "underhanded" and savvy "gamesmanship." The government categorically denies these accusations.

## BACKGROUND

The United States charged Ghearing via criminal complaint on May 17, 2019, with unauthorized distribution of controlled substances in violation of 21 U.S.C. § 841(a). (DE# 3.) The following month, on June 12, 2019, a federal grand jury returned a 61-count indictment charging Ghearing with 26 counts of healthcare fraud, in violation 18 U.S.C. § 1347, and 35 counts of unauthorized distribution of controlled substances, in violation of 21 U.S.C. § 841(a). (DE# 19.) The case was originally set for trial on August 20, 2019. (DE# 23.)

After the initial trial setting, Ghearing filed five motions to continue his trial dates, with accompanying signed speedy trial waivers. (*See* DE# 22, 33, 47, 60, 70.)[2] The first four motions by the defendant cited various reasons for seeking a continuance, including: defense counsel's need for additional time to review discovery due to the complex nature of the case and voluminous discovery (DE# 22, 47, 60); consideration and preparation of potential pretrial motions (DE# 22, 33); the parties' discussions regarding a potential plea agreement (DE# 33); the Covid pandemic (DE# 33); a scheduling conflict of defense counsel with another matter set for trial (DE# 60); and trial preparation.

The fifth motion to continue was a joint motion filed by the parties on July 16, 2021, which sought to postpone the September 2021 trial date. (DE# 70.) The parties jointly requested this continuance because—during an effort to compile joint trial exhibits of patient records for use at trial—the government discovered discrepancies between the patient records utilized by the government (which had been produced in discovery) and the records being used by the defense

---

[2] The first two continuances were requested by Ghearing's prior counsel. However, the most recent three continuances were requested by his current defense counsel.

(which the government did not have a copy). The parties jointly agreed that, with the continuance, they would "work in tandem to resolve this documentation issue" so that joint exhibits could be prepared for trial. (*Id.*, PageID #: 204.) The Court, as with the prior motions, granted the requested continuance and set a new trial date of April 5, 2022. (DE# 74.) These motions—all at the defendant's request and only one jointly with the government—resulted in the trial date being continued from August 20, 2019, until April 5, 2022.

The government then submitted a request to the electronic medical records company (EMRC) to get a new set of Ghearing's patient records directly from the EMRC. The government anticipated that these records would be identical to the records previously obtained and produced by the government. (DE# 148, PageID #:877.) In late October 2021, the EMRC produced a new copy of patient records to the government, which the government produced to the defense that same day. Although both parties now had the new version of the medical records (as well as the originals), the continued existence of the discrepancy in certain records still was not known (at least by the government).

Part of the delay is attributable to the fact that the government subsequently filed a motion to continue the April 2022 trial in light of the Supreme Court's upcoming oral argument in *Ruan v. United States*, No. 20-1410, and *Kahn v. United States*, No. 21-5261. The oral argument was set for March 1, 2022, with an expected decision in the summer of 2022. (DE# 78.) The *Ruan* and *Kahn* cases were widely expected to resolve a circuit split regarding the existence of the good faith defense and the standard for criminal liability in physician overprescribing cases—a key issue about which the parties disagreed.

As the government explained in its motion to continue, proceeding with trial risked a

miscarriage of justice to one or both parties, and threatened to waste the parties' and judicial resources in a lengthy trial—because, due to the questions to be resolved in the looming *Ruan* decision, any verdict would likely be subject to immediate challenge. (*Id.*, PageID #: 220-23.) Accordingly, the government argued that an ends-of-justice continuance was warranted to avoid a miscarriage of justice, to permit adequate time for the parties to prepare, and to promote judicial efficiency. (*See id.*) The government's motion also addressed the defendant's Sixth Amendment right to a speedy trial, explaining that Ghearing's rights would not be violated because the requested continuance would only result in a few months of delay; he was not in pretrial confinement; the delay was not the fault of either party; and the continuance would ultimately serve the ends of justice discussed above. (*Id.*, PageID #: 223-25; *see also* DE# 81 (Reply).) Ghearing opposed the motion to continue, arguing that these interests did not outweigh his now-asserted right to a speedy trial and that the parties should try the case under then-governing Sixth Circuit law, and assume the risk that a retrial might be warranted by *Ruan* before the ink had dried on a jury's verdict. (*See* DE# 80, 82.) The Court, after holding a hearing on the motion, ultimately granted the government's motion to continue the trial, made an ends of justice finding, and discussed the non-exhaustive factors set forth in the Speedy Trial Act that supported the decision to grant a short continuance. (DE# 87.)[3] The Court set the trial to begin on September 6, 2022. (*Id.*)

On Friday, August 19, 2022, while preparing for the upcoming trial, the government discovered that the new patient records from the EMRC did not all match the patient records

---

[3] On June 27, 2022, the Supreme Court issued its ruling in *United States v. Ruan*, 142 S. Ct. 2370 (2022). The government filed a notice of the ruling that same day to ensure that the Court and defense counsel were aware of the ruling. (DE#95.)

originally obtained by the government in May 2019. (*See* DE# 155, PageID #: 990-92.) That same day, the government brought the issue to defense counsel's attention, and began investigating the "audited" records. After investigating the altered records over the weekend, the government contacted defense counsel on Monday regarding additional altered records and filed a joint motion for an emergency status conference. (DE# 144.)

During the telephonic status conference on that same day, August 22, 2022, the government explained that learning of Ghearing's altered records "obviously impacts our preparation for trial," as well as the defense's preparation, because the defendant's expert had based his report on his review of the altered records. (DE# 155, PageID #: 991.) The government advised that it "intend[s] to use the evidence obviously in our . . . case in chief," and was also "considering whether or not to seek to charge obstruction in this." (*Id.*) The government explained that its investigation was ongoing, and that the evidence of the alterations was being discovered and disclosed "in real time." (*Id.*) However, the government only requested a short continuance of 1-2 weeks, noting that the parties "really do want to try to keep the trial track," and "nobody wants this thing to get moved significantly." (*Id.*) Defense counsel agreed that a week continuance seemed sufficient and asked if the government could provide the information it intended to use prior to the trial. (*Id.*) The Court agreed with the short continuance, and pushed the trial by one week, to September 13, 2022. (DE# 147.)  The Court noted that the parties should be prepared to discuss the altered records at the pretrial conference to determine what it meant for trial. (DE# 155, PageID #: 997.)

Four days later, on August 26, 2022, the government received the full audit trail from the EMRC, plus the IP address information from the Internet Service Provider. The government disclosed both to the defense the same day. Neither party filed a motion in limine regarding the

evidence of the altered medical records in advance of the pretrial conference. The United States had already raised its intent to admit the evidence in a call with defense counsel, at the emergency telephonic status conference, and the Court told the parties to be prepared to discuss the issue and its impact on the trial at the pretrial conference. *Id.*

At the final pretrial conference, on September 6, 2022, the government summarized for the Court and defense counsel what it had discovered over the past 17 days:

> [I]n a week-long period of time in December of 2019 through January of 2020, that Dr. Ghearing, from his home address, home IP address, logged into the electronic medical records system and altered the records of the seven indictment patients in at least 35 places affecting 16 counts of the indictment, and some of those change are referenced within their expert report by Dr. Murphy, as well as has required us to go back and redo our medical records exhibits because there was a set of altered records and a set of records that were not altered.

(DE# 152, PageID #: 955.) The government then explained that it intended to introduce the evidence "as consciousness of guilt," which it noted was particularly important following the Supreme Court's decision in *Ruan*. (*Id.*, PageID #: 955, 961.) Defense counsel objected to the use of the evidence, disputing that it was consciousness-of-guilt evidence. (*Id.*, PageID #: 957.)

After considering the parties' arguments, the Court orally ruled that the evidence of Ghearing's post-indictment alteration of patient medical records would not be admitted. (*Id.*, PageID # 961-63.) The Court also subsequently entered a written order memorializing the Court's ruling in open court. (DE # 157.)

The day after the Court's oral ruling, September 7, 2022, the government filed a protective notice of appeal, which included a signed certification pursuant to 18 U.S.C. § 3731 from the United States Attorney that the appeal was not taken for purpose of delay and that the evidence at issue involved substantial proof of a material fact in the proceedings. (DE# 153.) In light of the

6

government's notice of appeal, the Court entered an order continuing the trial to a date to be determined after the appeal is resolved, and excluding the time while the matter was on appeal as required by the Speedy Trial Act. (DE# 158.)[4]

The Sixth Circuit entered an order setting October 31, 2022, as the deadline for the government to file its opening brief. (Case No. 22-5787, DE# 5.) However, prior to the October 31st deadline for submitting its opening appellate brief—and upon completing its investigation and analysis of Ghearing's conduct—the government elected to seek a superseding indictment to charge Ghearing with additional crimes related to the alterations.

On October 17, 2022, a federal grand jury returned a superseding indictment charging Ghearing with two counts of obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 1519. (DE# 164.) The following day, October 18, 2022, the government promptly filed a motion seeking an indicative ruling from the Court as to whether, in light of the superseding indictment, the patient records altered by Ghearing would be admissible at trial. (DE# 166.) The motion argued that the evidence was admissible as to the new obstruction counts, and also explained why the altered records were relevant and admissible as to the other, original charges. The Court ordered briefing from the parties, with those briefs filed on October 28th and November 1st, respectively. (*See* DE# 168 (Ghearing Opposition), 169 (Government Reply)). In the interim, the government filed a motion with the Sixth Circuit requesting an extension of the October 31st deadline for its appellate brief, noting that the superseding indictment and motion for indicative ruling might obviate the

_____

[4] That same day, the Government had also filed a motion to stay the case in light of the appeal, which vested jurisdiction in the Sixth Circuit. (DE# 156.) The Court also granted this motion. (DE# 159.)

7

need to continue litigating the appeal. (Case No. 22-5787, DE# 7.)

On Thursday, November 3, 2022, the Court entered an order granting the government's motion for an indicative ruling and held that the evidence would be admissible as to the obstruction counts; the court reserved ruling on whether to provide a limiting instruction regarding the healthcare fraud and drug distribution counts, noting that a decision on that issue would be best made upon full consideration of the evidence developed at trial. (DE# 170.)

On November 4, 2022, the government asked defense counsel whether it would consent to a joint motion for remand in order to expedite the remand of the case.[5] Defense counsel did not respond to the government's email.

On Monday, November 7, 2022, the government filed a motion for remand with the Sixth Circuit, advising the appellate court of this Court's indicative ruling and asking that the case be remanded. (Case No. 22-5787, DE# 9.) Defense counsel did not file any response to the motion for remand. Again, on December 14, 2022, the government asked defense counsel by email whether it would consent to a motion to expedite remand, but received no response. On January 10, 2023, the Sixth Circuit entered an order granting the government's motion and remanding the case to this Court. (Case No. 22-5787, DE# 12.)

The Court thereafter conferred with the parties and, on February 3, 2023, set a new trial date of February 14, 2023. (DE# 183.) On Monday, February 6, 2023, the government filed a motion to continue the new trial date based upon the unavailability of an essential government

---

[5] Contrary to defense counsel's suggestion, the government has not engaged in conduct designed to intentionally delay proceedings, but has actually endeavored to avoid unnecessary delays. The government adamantly denies that its conduct was for the purposes of delay or that the filing of the notice of appeal was frivolous.

8

witness. (DE# 185.) Later that same day, Ghearing filed the instant Motion to Dismiss for Speedy Trial Act Violations, which related only to the Court's prior continuance of the April 2022 and September 2022 trial dates. (DE#189.)[6]

## ARGUMENT

### I. Ghearing's Rights Under the Speedy Trial Act Have Not Been Violated.

Neither of Ghearing's arguments regarding the Speedy Trial Act have merit. Instead, Ghearing merely seeks to relitigate this Court's prior rulings. As set forth below, these arguments should be rejected because the Court was well within its discretion to grant both continuances. *See United States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014).

The Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, governs the time within which a defendant charged with a crime in federal court must proceed to trial. The statute provides as a default rule that a trial shall commence within seventy (70) days of arraignment. *See* 18 U.S.C. § 3161(c)(1). However, the Speedy Trial Act also sets forth numerous events that permit, or require, a trial court to exclude certain time from the computation of the speedy trial clock. *See id.*, § 3161(h). As relevant to Ghearing's motion, two specific subsections are implicated here and they are each addressed in turn.

#### a. The Court Correctly Continued the April 2022 Trial and Excluded Time in Light of the Supreme Court's Forthcoming *Ruan* Decision

With respect to continuance of the April 2022 trial date, a court may exclude "any period of delay" on the basis of the Court's finding that "the ends of justice served" by granting such a continuance "outweigh the best interest of the public and the defendant in a speedy trial." *See* 18

---

[6] The defendant has since separately filed an opposition to the government's motion to continue based on the unavailability of Dr. Christensen. (DE# 190.)

U.S.C. § 3161(h)(7)(A).

The Court was within its discretion to grant a brief "ends of justice" continuance in light of the anticipated *Ruan* decision. *See Zedner v. United States*, 547 U.S. 489, 508 (2006) (noting that Congress clearly intended to give district courts "a measure of flexibility in accommodating unusual, complex, and difficult cases"). Oral argument in *Ruan* was set to take place on March 1, 2022, over a month prior to the actual trial date, with an expected decision in the summer of 2022.

Ghearing conceded that *Ruan* presented "a very complex but important" issue regarding the legal standard by which Ghearing's conduct would be judged. In other words, everyone, including Ghearing, recognized that *Ruan* created a significant risk that conducting a month-long trial could result in a miscarriage of justice to one or both parties, and threatened to waste the parties' and judicial resources in a lengthy trial. Despite this, Ghearing took the position that his speedy trial rights outweighed these considerations and that it did not serve the ends of justice to grant a brief continuance—and that the significant risk that *Ruan* would immediately undermine a verdict was simply a risk the Court and parties ought to assume. The Court disagreed with Ghearing's assessment:

> The parties agree the questions presented *Ruan* and *Kahn* are directly relevant to the charges in this case.
>
> ***
>
> The Speedy Trial Act allows for a continuance whenever a judge finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In making this determination the Court must consider certain factors, such as whether the failure to grant the continuance would result in a "miscarriage of justice," deny the defendant "reasonable time to obtain counsel," or would unreasonably deny either party time for effective preparation. 18 U.S.C. § 3161(h)(B)(i), (iv). The Court should also consider whether the case is so unusual or complex that it is unreasonable to expect adequate preparation within the time limits of the Speedy

10

Trial Act. 18 U.S.C. § 3161(h)(B)(iii). The list of enumerated factors is not exhaustive. *United States v. White*, 920 F.3d 1109, 1116 (6th Cir. 2019).

The Court finds that the ends of justice are served by continuing the trial in this case until after the Supreme Court issues a decision in Ruan and Kahn. In reaching this determination, the Court gives significant weight to the parties' concessions at the hearing that, despite their assertions that the current Sixth Circuit standard for a good faith defense is clear, they disagree on what that standard is. In light of the disagreement on the current standard, a continuance to allow the parties and the Court to prepare for trial under the correct standard, as determined by the Supreme Court, is the best course. The public interest will not be served if this case must be retried. The Court notes that the requested continuance is relatively brief. The Supreme Court is scheduled to hear oral argument on March 1, 2022, and expected to issue a decision in June or July. A continuance to September will allow the parties time to digest the Supreme Court decision and prepare for trial.

For these reasons, the Court concludes that the period of delay occasioned by the granting of the continuance is reasonable and excludable under the Speedy Trial Act, 18 U.S.C. §§ 3161, *et seq.* The Court specifically finds that the interests of justice served by granting the continuance outweigh the interests of the public and Defendant in a speedy trial on the date previously scheduled. 18 U.S.C. § 3161(h)(7)(A),(B).

(DE# 87, PageID #: 327-29.)

Ghearing's motion offers no new argument or controlling authority that requires this Court to reverse its prior decision. Instead, the motion simply represents Ghearing's continued disagreement with the Court's decision. As such, the motion should be denied for the reasons the Court has previously stated. (*Id.*)

> b. The Court Was Required to Continue the September 13, 2022, Trial and Exclude Time During the Pendency of the Government's Interlocutory Appeal

With respect to the continuance of the September 13, 2022, trial date, the statute states that the Court "shall" exclude "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any interlocutory appeal." *See id.*, § 3161(h)(1)(C).

Ghearing's argument regarding the continuance of the September 13, 2022, trial date is

wholly unavailing. After the Court informed the parties orally of its ruling regarding the government's proffered evidence at the pretrial conference on September 6, 2022, the government filed a notice of an interlocutory appeal. (DE# 153.) Based on the notice of appeal, the Court entered an order continuing the trial date. (DE #158.) This, of course, was necessary during the pendency of the interlocutory appeal, because the filing of the notice of appeal had the effect of transferring jurisdiction to the Sixth Circuit. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

Indeed, the Speedy Trial Act makes clear that upon filing a notice of interlocutory appeal, a district court "shall" exclude the delay resulting from the interlocutory appeal. 18 U.S.C. § 3161(h)(1)(C). As such, the Court's actions were entirely proper and consistent with the Speedy Trial Act, and there is no violation of a defendant's statutory rights when the Court acts in accordance with the statute's dictates.

As for Ghearing's arguments that the government's notice of appeal was "frivolous," that it was not taken in good faith, and was simply designed as a stall tactic to supersede, there is no support for it and the government steadfastly disputes filing the notice of appeal in bad faith. As an initial matter, the appeal temporarily deprived the Court of jurisdiction, and the Speedy Trial Act mandates the exclusion of such time. Ghearing cites no case law for the proposition that the Speedy Trial Act's time period can continue to run if an adversary disagrees with the need for an interlocutory appeal.

In any event, Ghearing's argument ignores that the government could have elected to seek

a new indictment charging Ghearing with obstruction in a separate case. In other words, the appeal was neither necessary for the government to be able to pursue obstruction charges, nor did the pursuit of those charges motivate the government's appeal. Moreover, even after the grand jury returned the superseding indictment, it was not yet clear that the interlocutory appeal was moot. If the Court had issued an indicative ruling that it would deny the government's motion to admit the evidence of altered records (or took an alternative approach, such as severing those counts), the interlocutory appeal still would have been necessary. In other words, it was only once the Court made its indicative ruling that the government concluded there was no need to pursue the interlocutory appeal. Ghearing's attempt to attribute a nefarious motive onto the government's actions thus falls flat, and his Speedy Trial Act claims should be denied.

## II.    Ghearing's Constitutional Right to a Speedy Trial Has Not Been Violated.

Ghearing's motion also fails to establish a violation of his constitutional right to a speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI. The Supreme Court has identified four factors that courts should take into account when determining whether a defendant's constitutional speedy trial right has been violated: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The length of the delay "is a threshold requirement," *United States v. Williams*, 753 F.3d 626, 632 (6th Cir. 2014) (citing *Barker*), and if "the length of the delay is not uncommonly long, then the judicial examination ends." *Id.* (quoting *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006)). A delay of a year or more is considered "presumptively

13

prejudicial," and leads to an examination of the other factors. *Id.* As discussed below, Ghearing has not shown a violation of his constitutional right to a speedy trial.

    a.  <u>The Length of the Delay is Not Excessive.</u>

Ghearing's motion to dismiss is not based on the two-and-a-half-year delay caused by his own motions. Instead, his motion focuses on his objection to the continuance from April 5, 2022, to the current trial setting, February 13, 2023. (DE# 189, PageID #: 1176-77.) Thus, the period of delay to which Ghearing objects—10 months and 1 week, or 315 days—is less than a year.

Nonetheless, for the purposes of this first factor, the Sixth Circuit simply measures from the date of arrest or indictment, whichever is earlier. *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011); *Bass*, 460 F.3d at 836. Thus, despite Ghearing's own role in causing the delay, this threshold requirement is met. Of course, the Court can and should still consider a defendant's own role in contributing to the delay from indictment to trial. *See Young*, 657 F.3d at 420 (denying speedy trial act claim despite 11-year delay from indictment to sentencing, because the defendant was responsible or participated in the majority of delay and failed to show prejudice).

    b.  <u>The Reasons for the Delay were not the Result of Bad Faith, Harassment, or
        Attempts to Gain a Tactical Advantage.</u>

Next, the Court must look at the reasons for the delay and, if attributable to the government, determine whether the governmental delays were for improper, neutral, or valid reasons. *See United States v. Williams*, 753 F.3d 626, 632-33 (6th Cir. 2014). As the Sixth Circuit has explained:

> Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government.

*Id.* at 632 (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006)).

14

Here, neither of the continuances prompted by the government were motivated by bad faith or an attempt to seek a tactical advantage. Instead, both were based on valid reasons.

As discussed above, the first continuance from the April 2022 trial date was warranted by the Supreme Court's forthcoming decision in *United States v. Ruan*, 142 S. Ct. 2370 (2022). Valid reasons existed for that continuance, such as: to avoid a potential miscarriage of justice, the existence of a novel question of law, and the significant risk of wasting the litigants and Court's time and resources by proceeding with trial after oral argument in *Ruan* but before a decision could be published. The Court's order granting a brief continuance recognized these concerns were all valid. (DE# 87.)

The second challenged continuance, on September 8, 2022, regarding the September 13th trial date, similarly involved a valid reason for delay—that is, the government had filed a notice of interlocutory appeal. (DE# 153.) That notice included a signed certification by the United States Attorney that the appeal was not taken for purpose of delay, and that the evidence at issue involved substantial proof of a material fact in the proceedings. And because an interlocutory appeal temporarily divests a district court of jurisdiction, the Court's order continuing the trial was necessarily for a valid reason.

Ghearing's only argument to the contrary is that the government's appeal was a frivolous one, undertaken as a stall tactic to buy the government time to obtain a superseding indictment that he contends it could not otherwise have sought. But this argument does not hold water, and is refuted by the record. As outlined above, the superseding indictment did not guarantee the admission of the evidence—at the time, the Court's ruling excluding the altered records remained controlling, and it was only upon seeking an indicative ruling that the records would be admissible

in light of the superseding indictment that the government concluded it was no longer necessary to litigate the appeal. Moreover, even without taking an appeal, the government could have sought to charge Ghearing with obstruction in a separate indictment.

The government also disputes Ghearing's suggestion that the appeal did not have merit. As noted in the government's motion for an indicative ruling, the government has consistently maintained that Ghearing's alteration of medical records—years after the patient visits in question and only after his indictment—was highly probative evidence of his consciousness of guilt regarding the unauthorized distribution of controlled substances and healthcare fraud charges. (*See, e.g.,* DE# 166, PageID #1089-90.) The government is not attempting to relitigate that issue again here—but given the allegations of defense counsel, the government believes it is necessary to reiterate its position that the evidence is properly admissible under the Rules of Evidence in order to rebut defendant's baseless assertion that the appeal was "frivolous" and based on "dilatory" conduct by the government.

The accusation that the government was "dilatory" is similarly misplaced—Ghearing does not identify any deadline with which the government failed to comply. Instead, Ghearing's argument is that the government could have discovered his manipulation of patient records sooner.[7] Particularly in a case involving voluminous records, Ghearing's argument borders on the absurd: that he should be permitted to alter some of the evidence, and then complain that the

---

[7] While theoretically true, the Court did not grant the continuance based on the evidentiary ruling or the government's request for more time to investigate; it was granted as a result of the appeal. And, even if the Court were to consider this failure to discover the defendant's actions earlier as the "reason" for the delay (rather than the appeal), at most it would still only be a neutral reason. *See Williams*, 753 F.3d at 632.

government failed to catch his alterations sooner, and so the evidence should be excluded (when he, of course, knew what he had done all along). Ghearing's argument again fails. There was no obligation, in Rule 16 or otherwise, for the government to explain to Ghearing how the evidence that it disclosed during discovery showed consciousness of guilt. Having disclosed the records, the government was free to point out discrepancies and make arguments about what inferences should be drawn from those discrepancies. Particularly in the absence of a motion to exclude the evidence, there was no requirement that the government "seek the introduction of these records" more than two weeks before trial. By raising the issue at the pretrial conference (even though no motion in limine had been filed by the defense), the government sought to avoid a delay and possible appeal during the middle of trial.

Ghearing nonetheless claims that the government always sought to delay trial. This fails upon even cursory inspection. For one thing, he ignores that, had the Court allowed the evidence of the alterations, trial would have proceeded as scheduled on September 13, 2022, and no continuance would have resulted. This is especially true because Ghearing's counsel did not suggest that the potential admission of the altered records would require another continuance or that it constituted unfair surprise to him. Second, Ghearing's argument ignores the significant practical challenges that continuing forward with trial on September 13, 2022, would have posed. For example, the defendant's expert report was based on the *altered* medical records (which the Court's oral ruling had indicated would not be admissible) and not the original records obtained by the government. As a result, even though the government was precluded from introducing the altered records, the altered records would necessarily have become an issue—at a minimum on cross examination—of the expert. In sum, the government had multiple, legitimate reasons for

17

seeking the interlocutory appeal and it was not undertaken in bad faith. This factor thus weighs against Ghearing's motion.

      c.  <u>The Defendant Only Recently has Begun Asserting his Right.</u>

Ghearing's motion notes that he began asserting his speedy trial right when the government sought to continue the April 5, 2022, trial date. (DE# 189, PageID #: 1180 (citing DE# 80).) This is true. However, his motion then proceeds to make additional claims purporting to show Ghearing's steadfast desire to promptly proceed to trial. For example, Ghearing claims he "did everything within his power to try to move pretrial proceedings along so that he could start trial as soon as possible[,]" and that his prior motion "to continue trial due to the availability of counsel, is not dispositive under this third factor." (*See id.*, PageID #: 1181.) Notably, Ghearing's motion to dismiss fails to mention that he has actually filed *five* motions to continue his trial. (*See* DE# 22, 33, 47, 60, 70.) And, of those five motions, only one involved a trial conflict involving his counsel. (*See* DE# 60.) The other four motions sought to delay trial due to additional time needed to review discovery due to the complex nature of the case and voluminous discovery (DE# 22, 47); consideration and preparation of potential pretrial motions (DE# 22, 33); the parties' discussions regarding a potential plea agreement (DE# 33); the Covid pandemic (DE# 33); trial preparation; and the need to resolve discrepancies with trial exhibits involving patient records (DE# 70).[8] *See*

---

[8] This was an issue caused by Ghearing himself. Ghearing produced to the United States a proposed set of medical records exhibits. In comparing with its own set, the United States' identified differences from the records it had provided in discovery. As explained at the September 6, 2022, pretrial conference, the United States raised the issue with defense counsel when comparing the sets of records for a proposed joint exhibit, and in good faith, pointed out to defense that Ghearing's own set of records lacked evidence that was present in the government's set, namely screening tools that were potentially beneficial to Ghearing's defense. (DE# 158, PageID # 957-59; DE# 148 PageID # 877-88.)

*Young*, 657 F.3d at 415 (distinguishing between delays caused or requested by the defendant and continuances requested by the government).

In short, while the defendant has asserted his right to a speedy trial since the proposed continuance of the April 2022 trial date, that is the only time period for which he has asserted his right. This casts doubt over his assertion of his speedy trial right. *See Williams*, 753 F.3d at 633-34 (noting that defendant's failure to assert right to speedy trial for eight months after arraignment and sixteen months after arrest casted doubt on the sincerity of his speedy trial demand).

      d.   <u>The Defendant has Failed to Show Prejudice as a Result of the Delay from April 5, 2022, to the Current Trial Setting.</u>

Finally, Ghearing has not shown prejudice as the result of the (less than one year) delay of his trial from April 2022 to the current trial date.

In evaluating prejudice, courts look at the three purposes of the speedy trial right: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Williams*, 753 F.3d at 634 (citing *Barker*, 407 U.S. at 532) (internal quotations omitted). The last factor is the most serious. *Id.* Importantly, "'[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000)). Not only must prejudice be shown with specificity, there "must be 'substantial prejudice' for a defendant to prevail[.]" *Id.* (quoting *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)).

As to the first factor, Ghearing is not presently incarcerated and has not been since May 2019. (DE# 14.) Thus, this factor does not aid Ghearing's motion.

19

As to the second factor, Ghearing's motion repeatedly references the negative ways in which his personal and professional life have been impacted since he was indicted in 2019, and the anxiety and concern he feels as he awaits the outcome of his trial. (*See* DE#189, PageID #: 1182-83.) But Ghearing is not challenging every continuance since his indictment; his motion only concerns the continuances from April 5, 2022, to the present trial date. Ghearing omits discussion of his multiple requested continuances, beginning in 2019. And Ghearing fails to differentiate between the supposed prejudice he suffered from his own motions and the recent two continuances at issue here.[9]

With respect to the third factor, Ghearing laments the "possibility" that witnesses may no longer be available and that their memories may be impaired because he was indicted in 2019 and the conduct at issue dates back to 2016. (*See id.*, PageID #: 1184-86.) But Ghearing does not identify *any* specific witnesses. Moreover, the motion wholly fails to address Ghearing's contribution to this "possible" loss of witnesses—since he sought continuances of the trial from August 2019 until April 2022. The Court should reject defense counsel's attempt to cast blame upon the government for these earlier delays—which were at the defense's request. And, finally, Ghearing's motion fails to identify any new or specific prejudice that he has suffered as a result of the trial being continued beyond April 5, 2022. This is particularly noteworthy, given that the trial is currently scheduled to begin next week. Ghearing's failure to identify any witnesses who are

---

[9] Confusingly, Ghearing also repeatedly complains about the time and expense of defending this case, (DE# 189, PageID #: 1183-84), when the government has actually sought multiple times to avoid unnecessary litigation. It was the government who sought to avoid proceeding to trial on the eve of the *Ruan* decision, given the risk that the parties might be forced to almost immediately retry the case. Likewise, it was the government who sought to remand the interlocutory appeal without requiring the parties to continue litigating the issue.

now unavailable to testify on his behalf, but who would have been in April 2022, further prevents him from establishing any cognizable prejudice for which the government is to blame.

## <u>CONCLUSION</u>

For the foregoing reasons, there has been no violation of the Speedy Trial Act or defendant's constitutional right to a speedy trial. Accordingly, the government respectfully requests that the Court deny defendant's Motion to Dismiss (DE# 189).

Respectfully submitted,

THOMAS J. JAWORSKI
Attorney for the United States
Middle District of Tennessee
Acting Under Authority Conferred
by 28 U.S.C. § 515

By:     *s/ Sarah K. Bogni*
Sarah K. Bogni
Juliet Aldridge
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone:  615-736-5151

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2023, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

By:     **_s/ Sarah K. Bogni_**
Sarah K. Bogni
Assistant United States Attorney

22