# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 2:19-cr-00010 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| GILBERT GHEARING | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion to Dismiss for Violation of the Speedy Trial Act (Doc. No. 189) and the Government's Response (Doc. No. 197). For the reasons stated herein, the Motion to Dismiss will be DENIED.

## I.  BACKGROUND

The Government initiated this case through the filing of a criminal complaint on May 17, 2019. (Doc. No. 3). Defendant was arrested the same day. Following a detention hearing before the Magistrate Judge, Defendant was released on a $100,000 unsecured bond, with conditions. (Doc. Nos. 14, 16, 17).

The grand jury issued an indictment on June 12, 2019. (Doc. No. 19). The Indictment charged Defendant with twenty-six counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 1-26), and thirty-five counts of distribution of controlled substances (Counts 27-61) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*Id*.). On June 17, 2019, Defendant waived personal appearance at arraignment and entered a plea of not guilty. (Doc. No. 22). The Court set the trial for August 20, 2019. (Doc. No. 23).

During a status conference on July 17, 2019, Defendant submitted a signed Waiver of Speedy Trial Rights and moved to continue the trial to allow time to review discovery materials and prepare for trial. (*See* Doc. Nos. 28, 29, 30). The Court continued the trial to April 21, 2020,

specifically finding that "the interests of justice served by granting the continuance outweighed the interests of the public and the Defendant in a speedy trial on the date previously scheduled." (Doc. No. 30).

About a month before the April 2020 trial date, Defendant again sought a continuance, accompanied by a signed Waiver of Speedy Trial Rights. (Doc. Nos. 32, 33). The reason given for the requested continuance was that the parties "anticipate[d] submitting a Plea Agreement," but were unable to do so by the previously scheduled deadlines due in part to a tornado in Nashville on March 4, 2020, and the recently declared state of emergency in response to COVID-19. (*Id*.). The Court granted the motion and continued the trial to September 8, 2020. (Doc. No. 34).

In May and June 2020, Defendant engaged new counsel, Ronald Chapman II and Meggan Sullivan. (Doc. No. 39, 45). Defendant again moved to continue the trial to allow his new attorneys time to review discovery materials and prepare for trial, which was expected to be hampered by COVID-19 related travel restrictions and safety concerns. (Doc. Nos. 47, 48). Defendant requested a continuance of 120 days. (*Id*.). The Court held a status conference on July 22, 2020. (Doc. No. 54). In light of the various considerations in the case, including the Government's stated intent to supersede the indictment and ongoing concerns regarding COVID-19, the parties proposed a June 2021 trial date (*see* Doc. Nos. 54, 56), and Defendant signed a Waiver of Speedy Trial Rights (Doc. No. 55). The Court granted Defendant's motion to continue and scheduled the trial for June 8, 2021. (Doc. No. 56).

In February 2021, the Court held a telephone conference at the parties' request. (Doc. Nos. 57, 59). Defendant stated he would be filing a motion to continue the trial due to a scheduling conflict with the June 8, 2021 date. (Doc. No. 59). The Government indicated that, although it had been considering superseding the indictment, it had decided to proceed without superseding

because the grand jury was not meeting due to COVID-19. The Court granted Defendant's motion to continue, which was accompanied by a signed Waiver of Speedy Trial Rights, and rescheduled the trial for the parties' agreed date – September 7, 2021. (Doc. No. 60, 61, 62).

The next motion to continue came about six weeks before the September trial date. (Doc. No. 70 (filed July 16, 2021)). The parties were working together to provide a single complete set of Defendant's patient records to serve as joint exhibits for trial when the Government noticed inconsistencies in the sets of records and brought it to the attention of Defendant's attorneys. (*See* Doc. No. 70). Defendant stated that several of the documents "missing from the proposed joint exhibits would be to the benefit of Dr. Ghearing's defense." (*Id*.). At a status conference on July 22, 2021, the Government explained there was "a problem with the medical records matching … there are forms in [the Government's] records, that do not appear in the stack that Dr. Ghearing's defense team has." (Transcript of July 22, 2021 Status Conference, Doc. No. 148 at PageID# 877). To resolve the problem, the parties agreed to request a new set of records from the medical records company. (*Id*.). They agreed that continuing the trial approximately six months would allow enough time to obtain a new set of records, review those records, and prepare for trial. (*Id*. at PageID# 879). Defendant, who participated in the status conference by telephone, stated that he understood the attorneys proposed continuing the trial six to seven months and that he was comfortable with that length of continuance. (*Id*. at PageID# 881). Prior to the status conference, Defendant signed and filed a Waiver of Speedy Trial Rights. (Doc. No. 72). After further consultation with the parties regarding available trial dates, the Court continued the trial to April 5, 2022. (Doc. No. 74).

The next request for a continuance came on January 28, 2022, at the behest of the Government, which moved to continue the trial until after the Supreme Court issued a decision in

3

*Ruan v. United States*, No. 20-1410, and *Kahn v. United States*, No. 2105261. (Doc. No. 78). The cases were scheduled for argument on March 1, 2022, and expected to be decided by June 2022. The decision was expected to provide clarification on the applicable standard for physician overprescribing cases.

The Government argued that a brief continuance was warranted because a trial using an incorrect legal standard could result in a miscarriage of justice and an inefficient use of resources of the parties and the court should the case, the trial in which was expected to last several weeks, need to be retried. (*Id*.). Defendant objected to a continuance of the trial arguing that there were "no ends of justice served by a new trial setting which would outweigh the defendant's right to a speedy trial." (Doc. No. 80). Defendant argued the legal standard to be applied in this case was "not in question in *Ruan*" and that there should be no concern that a trial prior to the decision in those cases could result in a misapplication of the law. (*Id*. at 6-7).

The Court held a hearing on February 15, 2022. (Doc. No. 86; Transcript filed at Doc. No. 89). After discussion by both sides regarding their view of the legal standard in the Sixth Circuit, the parties conceded that the applicable standard was up for debate. More precisely, both sides "felt confident" they knew what the Sixth Circuit standard was, but they did not agree as to the standard itself. (Doc. No. 89 at PageID# 346-47). The Court concluded that the ends of justice served by granting the continuance outweighed the interests of the public and the defendant in a speedy trial and granted the Government's motion to continue. (Doc. No. 87). The Court continued the trial to September 6, 2022, reasoning that this date would allow time for the Supreme Court to decide *Ruan* and for the parties to consider the opinion and prepare for trial. (*Id*.).

The Supreme Court issued a ruling in *Ruan* on June 27, 2022. *United States v. Ruan*, 142 S. Ct. 2370 (2022). The Government filed a notice of the ruling the same day. (Doc. No. 95).

On August 22, 2022, the parties jointly requested an emergency status conference. (Doc. No. 144). The Court held a status conference that day, during which attorneys for the Government explained that while preparing for trial, they discovered that some of the new patient records obtained from the medical records provider did not match the patient records originally obtained by the government in May 2019. (Transcript, August 22, 2022, Doc. No. 155 at PageID# 990-92). The Government had immediately notified defense counsel of the issue. The Government indicated that, based on its preliminary investigation, it appeared Defendant had altered the medical records after the Indictment. (*Id*. at PageID# 990). The Government stated that it intended to use the evidence of alterations in its case in chief and was considering whether to seek to add an obstruction charge. (*Id*. at PageID# 991).

Counsel for Defendant stated that they had not yet had time to assess the alleged modifications to the records. (*Id*. at PageID# 993). The parties agreed to postpone the trial one week to allow both the Government and the Defense to assess the information a determine how to proceed. (*Id*. at PageID# 995).

At the pretrial conference, the Government stated that through its recent investigation, it had learned:

> [I]n a week-long period of time in December of 2019 through January of 2020, that Dr. Ghearing, from his home address, home IP address, logged into the electronic medical records system and altered the records of the seven indictment patients in at least 35 places affecting 16 counts of the indictment, and some of those change are referenced within their expert report by Dr. Murphy, as well as has required us to go back and redo our medical records exhibits because there was a set of altered records and a set of records that were not altered.

(Doc. No. 152, PageID# 955). The Government stated that it intended to introduce the evidence as "consciousness of guilt." (*Id*.). Defendant objected to the use of the evidence arguing that "it

5

shouldn't be allowed as consciousness of guilt … [i]t shouldn't be allowed to come into trial at all because all of this happened significantly after." (*Id*. at PageID# 957).

The Court ruled that evidence of Defendant's post-indictment alteration of medical records would not be admitted as evidence at trial. (*Id*. at PageID# 961-63; Doc. No. 157). The day after the Court's oral ruling, the Government filed a notice of appeal, which included a signed certificate pursuant to 18 U.S.C. § 3731 that the appeal was not taken for purpose of delay and that the evidence at issue involved substantial proof of a material fact in the proceeding. (Doc. No. 153). In light of the Government's notice of appeal, the Court entered an order staying the case and continuing the trial to a date to be set after the appeal was resolved. (Doc. Nos. 158, 159). The Court noted that the time the matter was on appeal was excluded from the calculation of time within which the trial must commence under the Speedy Trial Act. (Doc. No. 158 (citing 18 U.S.C. § 3161(h)(1)(C))).

Before the deadline to submit briefs on appeal, on October 17, 2022, a grand jury returned a superseding indictment charging Defendant with obstruction of justice, in violation of 18 U.S.C. § 1503, and destruction, alteration, or falsification of records in a federal investigation, in violation of 18 U.S.C. § 1519. (Doc. No. 164). The following day the Government asked the Court for an indicative ruling as to whether the altered patient records would be admissible at trial in light of the Superseding Indictment. (Doc. No. 166).

In an Order entered November 3, 2022, the Court held that that the evidence would be admissible as to the obstruction counts; the court reserved ruling on whether to provide a limiting instruction regarding the healthcare fraud and drug distribution counts, noting that a decision on that issue would be best made upon full consideration of the evidence developed at trial. (Doc. No.

170). On November 7, 2022, Government filed a motion for remand with the Sixth Circuit. (Case No. 22-5787, Doc. No. 9). The Case was remanded on January 10, 2023. (Doc. No. 173).

On February 3, 2023, after conferring with the parties, the Court set a new trial date of February 14, 2023. (Doc. No. 183). Defendant then filed the instant motion to dismiss arguing that the final two continuances violated his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment. (Doc. No. 189).

## II. ANALYSIS

### A. The Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, governs the time within which a defendant charged with a crime in federal court must proceed to trial. The statute provides that a trial shall commence within seventy (70) days from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, which ever date occurs last. 18 U.S.C. § 3161(c)(1). Certain periods of delay, however, are excluded from the time calculation. *Id*. § 3161(h). As relevant here, these excludable periods include "any period of delay resulting from other proceedings concerning the defendant, including … delay resulting from any interlocutory appeal" and any delay resulting from a continuance granted on the basis of the Court's finding that the "ends of justice served" by granting a continuance "outweigh the best interest of the public and the defendant in a speedy trial." *Id*. § 3161(h)(1)(C) and (h)(7)(A).

Defendant challenges two of the trial continuances as violative of the Speedy Trial Act: (1) the continuance of the April 2022 trial date to allow the parties and the Court the benefit of the Supreme Court Decisions in *Ruan*; and (2) the continuance of the September 2023 trial date due

to the Government's interlocutory appeal of the Court's evidentiary ruling. Neither of these continuances violate the Speedy Trial Act.

In continuing the April 2022 trial (Doc. No. 87), the Court found that the interests of justice served by granting the continuance outweighed the interests of the public and the defendant in a speedy trial. The Court explained the basis for granting the continuance as follows:

> The parties agree the questions presented *Ruan* and *Kahn* are directly relevant to the charges in this case. The questions presented include: (1) whether there is a good faith defense to charges of violation of the Controlled Substance Act and whether the good faith is objective or subjective; and (2) whether the "usual course of professional practice" and "legitimate medical purpose" prongs of 21 C.F.R. § 1306.4(a) should be read in the conjunctive or disjunctive.
>
> The Government argues that the Supreme Court decision will almost certainly have direct bearing on this case and will affect the proof to be offered at trial and the Court's instruction to the jury on the law. Defendant objects to a continuance of the trial date. He argues that he should be tried under the law as it currently stands in the Sixth Circuit. Defendant contends he will be prejudiced by a continuance, noting that the case has been continued five times, the passage of time may affect witnesses' recollection, and he has already incurred significant legal fees for trial preparation. In addition, he claims the pendency of these criminal charges has negatively impacted his livelihood and retirement plans. Finally, Defendant notes the possibility that the Supreme Court might decide the cases on other grounds and leave the questions presented unresolved, or the Court's decision might not provide complete clarity of the issues, leaving the parties and the Court to grapple with interpretation of the decision.
>
> …
>
> The Court finds that the ends of justice are served by continuing the trial in this case until after the Supreme Court issues a decision in *Ruan* and *Kahn*. In reaching this determination, the Court gives significant weight to the parties' concessions at the hearing that, despite their assertions that the current Sixth Circuit standard for a good faith defense is clear, they disagree on what that standard is. In light of the disagreement on the current standard, a continuance to allow the parties and the Court to prepare for trial under the correct standard, as determined by the Supreme Court, is the best course. The public interest will not be served if this case must be retried. The Court notes that the requested continuance is relatively brief. The Supreme Court is scheduled to hear oral argument on March 1, 2022, and expected to issue a

8

Case 2:19-cr-00010   Document 212   Filed 02/13/23   Page 8 of 16 PageID #: 1407

> decision in June or July. A continuance to September will allow the parties time to digest the Supreme Court decision and prepare for trial.
>
> For these reasons, the Court concludes that the period of delay occasioned by the granting of the continuance is reasonable and excludable under the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq. The Court specifically finds that the interests of justice served by granting the continuance outweigh the interests of the public and Defendant in a speedy trial on the date previously scheduled. 18 U.S.C. § 3161(h)(7)(A),(B).

(*Id*.).

Defendant does not argue that the Court's ends of justice finding was in error or raise any new arguments regarding the propriety of that continuance. The Court does not find a different conclusion is warranted now, particularly given that the *Ruan* decision did, in fact, address the standard of law to be applied to the charged offenses. If the trial had proceeded without benefit of that decision, it is likely the Court would have instructed the jury to apply an erroneous standard. The minimal delay incurred while waiting for the Supreme Court decision does not outweigh the interest of justice in trying Defendant under the correct legal standard. To do otherwise could have resulted in a miscarriage of justice or a retrial, neither of which serve the interest of justice.

Defendant's second alleged Speedy Trial Act violation concerns the time excludable during the Government's interlocutory appeal of the Court's evidentiary ruling. The Speedy Trial Act specifically provides that a period of delay resulting from an interlocutory appeal *shall* be excluded from the speedy trial calculation. 18 U.S.C. § *Id*. § 3161(h)(1)(C). Accordingly, the Court finds that this delay attributable to the Government's interlocutory appeal did not violate the Speedy Trial Act.

**B. Sixth Amendment**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …" U.S. Const., Amend. VI. The Supreme Court has

established four factors for evaluating a speedy trial claim under the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "[N]one of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*; *see also*, *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017).

1. **Length of Delay**

The first Barker factor – the length of pretrial delay – "functions as both a triggering mechanism and as a measure of the severity of the prejudice suffered by an accused." *United States v. Thornton*, 822 F. App'x 397, 403 (6th Cir. 2020). "[T]he delay must be lengthy enough to warrant a constitutional analysis at all, 'since, by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.'" *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)). If the delay is not "uncommonly long," the Court need not examine the remaining factors. *United States v. Williams*, 753 F.3d 626, 632 (6th Cir. 2014). A delay of over a year is considered "presumptively prejudicial" and satisfies the lengthiness requirement, triggering examination of the remaining factors. *Id.*; *see also*, *Thornton*, 822 F. App'x at 403. Here the total delay is more than one year, and the Court will, therefore, proceed to consideration of the remaining factors.

2. **Cause of Delay**

The second factor "looks at whether the government or the criminal defendant is more to blame for the delay." *United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013); *Williams*, 753 F.3d at 632 ("[T]he second Barker factor is not a search for a blameless party."). "[D]ifferent

weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

Here, the first five continuances, totaling almost two years, were at the request of the Defendant (the fifth requested continuance was a joint request). Of the challenged continuances, both were prompted by the Government. However, although prompted by the Government's motion, the Court cannot say that the continuance due to the *Ruan* decision was attributable to the "fault" of the Government. The Court's decision to continue the trial was motivated by judicial efficiency and the interests of justice rather than any interest of benefit to the Government's prosecution of the case. The Court finds that this continuance is neutral and should not be charged against the Government.

The second challenged continuance, on September 8, 2022, regarding the September 13 trial date was due to the Government's filing a notice of interlocutory appeal of the Court's order excluding evidence. The notice included a signed certification by the United States Attorney that the appeal was not take for purpose of delay, and that the evidence at issue involved substantial proof of a material fact in the proceeding. (Doc. No. 153).

It is well established that an interlocutory appeal by the Government is a valid reason for delay. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) ("It hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay."). In assessing the purpose and reasonableness of such an appeal, the court considers: "the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the

11

Case 2:19-cr-00010   Document 212   Filed 02/13/23   Page 11 of 16 PageID #: 1410

case, and – in some cases – the seriousness of the crime." *Id*. (citing *United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir. 1978). "A delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous." *Id*.

The evidence at issue in the Government's interlocutory appeal was evidence that, after the Indictment, the Defendant altered medical files of patients named in the Indictment. The Government sought to admit the evidence as evidence of consciousness of guilt regarding the unauthorized distribution of controlled substances and healthcare fraud charges. (*See* Doc. No. 152, PageID# 955). The Government argued this evidence was particularly important following the Supreme Court's decision in *Ruan*. (*Id*. at PageID# 955, 962).

Although the Court held that the evidence, discovered shortly before the trial, would not be admitted, appeal of this ruling was not frivolous. True, given the course of events – the Superseding Indictment, the Court's indicative ruling, and dismissal of the appeal – the Sixth Circuit did not issue a ruling and it is impossible to forecast what that decision would have been. Nevertheless, the Court does not view the issue on appeal to be frivolous nor is there evidence that the appeal was taken in bad faith or to intentionally delay the proceeding to gain tactical advantage. The evidence at issue is relevant to the charges and the charges, which at the time totaled 61 counts, are serious.

Defendant's assertion that the Government filed a frivolous interlocutory appeal so that it could obtain a superseding indictment is uncompelling. First, the Government could have proceeded to trial and obtained a separate indictment on the obstruction charges. Second, the

Government's chosen course of action – obtaining a superseding indictment and dismissing the appeal – was, in all likelihood, more expeditious than pursuing the appeal to decision.[1]

The Court also finds that the Government's failure to notice the discrepancies in the records earlier was not intentional, in bad faith, or to obtain a tactical advantage. At most, the failure to notice that the medical records were changed after the Indictment until it came time to prepare for trial was negligent, and negligence is a "neutral" reason for delay. See *Robinson*, 455 F.3d at 607.

In sum, the Court finds no indication that the interlocutory appeal was frivolous or brought for an improper purpose. Accordingly, this factor is neutral.

### 3. Assertion of Rights

The third factor considers "[w]hether and how a defendant asserts his rights [to a speedy trial]" and is "closely related to the other factors." *Barker*, 407 U.S. at 531. "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by personal prejudice, which is not always readily identifiable, that he experiences." *Id*.

Defendant first asserted his speedy trial rights beginning in February 2022, when the Government sought to continue the April 2022 trial date. (*See* Doc. No. 80). Prior to that, however, Defendant sought five continuances of the trial, pursuant to which the trial was continued from

---

[1] The briefing schedule set by the Sixth Circuit would have had the Defendant's response brief due on November 28, 2022, several weeks after the Government moved to dismiss the appeal after proactively obtaining an indicative evidentiary ruling from this Court. (*See* Case No. 22-5787, Doc. No. 5 (setting briefing schedule); Doc. No. 9 (United States' Motion to Remand in Light of Indicative Ruling, Nov. 7, 2022)).

August 20, 2019, to April 5, 2022.² It is only the continuance of the trial from April 5, 2022, to the current setting on February 14, 2023, that Defendant has asserted his speedy trial rights.

Defendant argues that this factor should weigh in his favor because he did not unnecessarily delay the trial during this period by filing frivolous pretrial motions. Defendant is correct that the delays since the April 2022 trial setting have not been due to his actions. However, given the numerous delays at the outset of the case, all of which were either at the behest of the Defendant or jointly requested, the Court finds this factor is neutral. *See United States v. Felix*, 850 F. App'x 374, 384 (6th Cir. 2021) (finding this factor neutral when the defendant asserted his sixth amendment rights, but not until two years after the indictment and after seeking several continuances and extensions of time).

### 4. **Prejudice to Defendant**

The fourth factor "requires the defendant to show that substantial prejudice has resulted from the delay." *Zabawa*, 719 F.3d at 563. The Supreme Court directs that prejudice is assessed "in the light of the interests of defendants which the speedy trial right was designed to protect…: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Impairment of the defense is the "most serious" concern, because "the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id*. "[A] defendant who cannot demonstrate how his defense was prejudiced with *specificity* will not make out a speedy trial claim

---

² Doc. Nos. 28, 33, 47, 60, 70. Defendant filed waivers of Speedy Trial Rights for each of these five continuances. (Doc. Nos. 29, 32, 55, 61, 72). The last motion to continue trial (Doc. No. 70) was a joint motion to continue arising out of the need to resolve discrepancies in the medical records exhibits, a discrepancy the Government asserts was caused by the Defendant, which became the subject of the interlocutory appeal, and for which Defendant was subsequently indicted.

14

no matter how great the ensuing delay." *United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011) (emphasis in original).

Defendant acknowledges that because he has not been incarcerated pending trial, the first consideration is not of concern. He argues, however, that he has been encumbered with restrictions of pretrial release, which have affected his family's quality of life and "significantly hindered" his medical practice. He adds that the criminal prosecution has caused anxiety that has been prolonged by the delay in trial.

There is no question Defendant has been personally prejudiced by the ongoing criminal prosecution. However, the most important consideration with regard to this factor is whether the defense has been impaired by the delay. Defendant asserts there are four areas in which the Defendant has been impaired: (1) the expense of prolonged defense, specifically the expense of fighting the interlocutory appeal; (2) the potential that witnesses have become unavailable; (3) the possibility that witness recall is impaired; and (4) the possibility that widespread dissemination of medical misinformation on the internet will affect the jury.

The final three concerns are purely hypothetical and do not show any specific prejudice to Defendant by the delay in trial. Defendant does not identify any witnesses who have become unavailable or any witnesses whose recall has been impaired to the detriment of the defense. This is particularly noteworthy considering that the trial is imminent, yet Defendant does not identify any defense witnesses who were available in April 2022 but are not available now.

The possibility that the jury could have read medical misinformation on the Internet is a valid concern, but not one that is caused by the delay in trial. Moreover, this concern will be remedied by the voir dire process and jury instructions.

Finally, the Court recognizes that the costs of defense are substantial. However, despite the expense, Defendant does not claim that his limited resources have affected his representation in this case or his ability to prepare for trial.

In summary, Defendant's argument of prejudice is that he has suffered the burdens imposed by the conditions of pretrial release and the anxiety undoubtedly experienced by all defendants facing criminal prosecution. He has not identified with specificity any area where the delay in trial has prejudiced the defense and has shown no "substantial prejudice" from the delay.

Having considered the *Barker* factors, the Court finds the Government did not violate Defendant's Sixth Amendment right to a speedy trial.

## III. CONCLUSION

For the reasons stated, the Court finds neither a violation of the Speedy Trial Act nor of Defendant's Sixth Amendment rights. Accordingly, Defendant's Motion to Dismiss for Violation of the Speedy Trial Act (Doc. No. 189) will be **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE