IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GILBERT R. GHEARING,

    Defendant.

Case No. 2:19-cr-00010
District Judge William L. Campbell, Jr.

---

**DEFENDANT'S MOTION TO SUPPRESS FOR VIOLATING THE FOURTH AMENDMENT, TO DISMISS FOR VIOLATING DUE PROCESS, OR FOR A *FRANKS* HEARING**

---

Defendant, Gilbert Ghearing, M.D. ("Dr. Ghearing"), by and through counsel, Ronald W. Chapman II and Meggan B. Sullivan, hereby files this Motion to Suppress for Violating the Fourth Amendment, to Dismiss for Violating Due Process, or for a *Franks* Hearing. Defendant seeks suppression or dismissal because of Task Force Officer, Rebecca Wright's, affirmative misrepresentations which were used to secure the Government's second search warrant. In place of suppression or dismissal, Defendant asks the Court to hold a *Franks* hearing. In support, Defendant submits the accompanying brief, below.

                              Respectfully Submitted,
                              CHAPMAN LAW GROUP

Dated: March 9, 2023              /s/ *Ronald W. Chapman II*
                                        Ronald W. Chapman II, Esq., LL.M.
                                        Michigan Bar No. P73179
                                        *Counsel for Defendant Ghearing*
                                        1441 West Long Lake Road, Ste 310
                                        Troy, MI 48098
                                        T: (248) 644-6326
                                        RWChapman@ChapmanLawGroup.com

Dated: March 9, 2023                  /s/ *Meggan B. Sullivan*
                                      Meggan B. Sullivan, Esq.
                                      Tennessee Bar No. 33067
                                      *Counsel for Defendant Ghearing*
                                      424 Church Street, Ste. 2000
                                      Nashville, TN  37219
                                      T: (615) 457-0449
                                      MSullivan@ChapmanLawGroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the parties involved.

                                      /s/ *Meggan B. Sullivan*
                                      Meggan B. Sullivan, Esq.
                                      Tennessee Bar No. 33067
                                      *Counsel for Defendant Ghearing*
                                      424 Church Street, Ste. 2000
                                      Nashville, TN  37219
                                      T: (615) 457-0449
                                      MSullivan@ChapmanLawGroup.com

# DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS FOR VIOLATING THE FOURTH AMENDMENT, TO DISMISS FOR VIOLATING DUE PROCESS, OR FOR A *FRANKS* HEARING

For the reasons that follow, Defendant maintains that suppression of all evidence flowing from the violation of his Fourth Amendment right to privacy is appropriate. This includes all evidence from the February 8, 2019 search warrant and the subsequent search warrant EclinicalWorks. Defendant also respectfully asks the Court to dismiss the Government's Superseding Indictment, with prejudice. In place of suppression or dismissal, Defendant asks for a *Franks* hearing so that the Court may examine the extent of TFO Rebecca Wright's ("Wright") deception.

I. **Background**

On February 7, 2019, U.S. Magistrate Frensley in the Middle District of Tennessee signed the Application for a Search Warrant for target location 151 McArthur Avenue, Celina, TN. Attachment D included a list of Dr. Gilbert Ghearing patient files to be seized. The search warrant was not for eClinicalWorks but rather for the practice's physical location. On February 8, 2019, a search warrant was executed on 151 McArthur Avenue, Celina, TN. During the raid of the clinic, multiple law enforcement offices and agents entered the clinic seized the phones of the employees and placed employees in specific locations in the clinic. For a period, those people were instructed by law enforcement not to leave the clinic. Two clinic employees, Amber Hall ("Hall) and Charlie Price ("Price") were instructed to sign into Dr. Ghearing's electronic medical record ("EMR") software utilizing his username and password and download the medical charts of the listed patients from the electronic medical records system called eClinicalWorks. The charts were signed as if Dr. Ghearing closed and downloaded the charts.

While being detained on that day, Hall and Tipton gave coerced statements to law enforcement. Both witnesses gave these statements after they were threatened with jail if they did not cooperate and tell law enforcement the truth. Both Tipton and Hall felt scared and compelled to comply with law enforcement or go to jail.

Hall received a subject letter from the United States Attorney's Office on February 26, 2019. This letter warned her that she was the subject of a federal criminal investigation and was urged by the United States Attorney's Office to obtain defense counsel. Tipton also received a subject letter from the United States Attorney's Office on February 27, 2019. This letter warned her that she was the subject of a federal criminal investigation and was urged by the United States Attorney's Office to obtain defense counsel. At this point, there was no evidence that either employee was involved in violations of Federal law.

Following law enforcement coercion on February 8, 2019 and the service and receipt of the subject letters, both Hall and Tipton began a series of meetings and communications with Wright and during those meetings and communications an informant relationship was formed with both women.

Regarding the communication between Wright and Tipton, the following series of communications took place:

- On February 8, 2019, Tipton gave a statement to Special Agent Fletcher Blalock. During this interview, Tipton provided information about the following patients: Laura Key, Keith May, Myrtle Cherry, Roxy Calvert and Wyeth Beechboard.

- On March 6, 2019, Tipton met with Wright and FBI Special Agent Megan Chapin. No report of this interview was drafted on March 6, 2019. At this point, Tipton

provided Wright a notebook documenting her unauthorized access of patient records and emails. Wright made copies of at least three (3) pages of this notebook.

- Between February 26, 2019, and March 6, 2019, Tipton kept the notebook documenting her unauthorized access of patient records and emails. That notebook included the following patients: Wyeath Beechboard, Karl Walker, Roxie Calvert, Jennifer Talley, Beth Gorman, Connie Capps, Keith May and Darryl Gulley. After providing the notebook to Wright, Tipton burned the notebook.

- On March 8, 2019, at 8:06 a.m., Wright sent Tipton a text message. This text message stated, "Are you at work? I wanted to ask you a few things." Tipton responds immediately, "I'm about headed there in a min." Wright replied, "do you have a minute to talk before you go". There is no documentation of this phone call however Tipton stated a phone call took place. At 12:42 p.m. that day, Tipton texts Wright, "I went back through like 300 of my last emails and can't find anything. My brain is mush today though, if I think of anything I'll let you know."

Regarding the communications between Wright and Hall the following series of communications took place:

- On February 8, 2019, Hall gave a statement to SA Micael Galluzzi and FBI Brandon Bushkell. During this interview, Hall was informed law enforcement of no specifically named patients and only unnamed patients.

- On February 18, 2019, Wright texted Hall and said, "can we meet tomorrow"? Hall replied "My husband is worried that if they find out they will make my life hell…"

- On March 7, 2019, Hall gave a statement to Special Agent Megan Calpin and Wright. During this interview, Hall provided information about the following

5
Case 2:19-cr-00010 Document 239 Filed 03/09/23 Page 5 of 20 PageID #: 1654

patients: Ann Kane, Candida Hendershot, Margaret Arms, Darrell Gulley, Connie England, Wyeath Beechboard and Karolina Hood.

- On May 21, 2019, Hall texted Wright and said, "I no longer have a laptop or access to anything. So, I can't answer questions about billing those visits. Sorry.

Following these communications and interviews, on March 13, 2019, Wright drafted a report of investigation. That report does not include an attachment or even reference the attachment or the evidence received from Tipton. Wright included information from the unauthorized access of patient records in this report. This report was written as if it was from Tipton's memory and recall instead of documenting the unauthorized access and informant relationship and activities of Tipton.

Immediately after drafting the report of investigation documenting those communications, Special Agent Thomas D. Esslinger, while relying on the information obtained from Wright and SA Fletcher, filed an Application for Search Warrant in the Middle District of Tennessee on March 14, 2019. Affidavit Paragraph 68 states on March 6 and 7, 2019 law enforcement conducted interviews of current employments of Ghearing. Affidavit Paragraph 69 states employees told agents that they used the Subject Account's internal email/messaging system to communicate with Ghearing and each other about patients of Ghearing. Affidavit Paragraph 70 falsely states Ghearing's employees explained to law enforcement agents that they have provided information and expressed concerns about Ghearing's controlled-substance prescriptions using the Subject Account, as recently as February 2019. Needing information for a warrant of eClinicalWorks she and other law enforcement instructed through coercive measures Hall and Tipton to go get it for her by unlawfully accessing Ghearing MD's electronic medical record.

Paragraph 70 reiterates the unauthorized information received from the March 6th notebook regarding the following patients:

- J.T., W.B., C.H.[1]

Defendant now files this motion, asserting his Fourth Amendment right to privacy was violated. In so doing, Defendant respectfully asks the Court to suppress all evidence obtained during the February 8, 2019, search warrant and subsequent searches. Defendant also asks the Court to dismiss the second superseding indictment, with prejudice. In lieu of suppression or dismissal, Defendant asks the Court to hold a *Franks* hearing.

## II. The Fourth Amendment

The Fourth Amendment protects "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). When a government agent infringes on this reasonable expectation, a "search" occurs for the purposes of the Fourth Amendment, and the government must obtain a warrant or demonstrate that an exception to the warrant requirement applies. The Fourth Amendment, however, only protects against "governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" Id. at 113-14 (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)); see also *United States v. Lichtenberger,* 786 F.3d 478, 484 (6th Cir. 2015) (affirming "[t]he protections of the Fourth Amendment do not apply to a search or seizure effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." (quotations and citations omitted)).

---

[1] All of these initials correspond with patients in the Tipton notebook.

Where evidence is obtained in violation of the Fourth Amendment, the Supreme Court has affirmed suppression is the appropriate remedy. *See United States v. Leon,* 468 U.S. 897, 922 (1984)

Unlawful access of stored communications is a crime. 18 U.S.C. § 2701-2710. Electronic storage is defined as both any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof. 18 U.S.C. § 2510. Section 2701 of Title 18 makes it an offense to either (a) intentionally access, without authorization, a facility through which an electronic communication services is provided; or (b) intentionally exceed the authorization for such facility; and as a result of this conduct, obtain, alter or prevent authorized access to a wire or electronic communication while it is in electronic storage in such a system. 18 U.S.C. § 2701(a). This provision is intended to prevent corporate spies.

Governmental access to electronic stored communications generally requires a warrant. 18 U.S.C. § 2703. Agents executing the original search and agents instructing Tipton and Hall to access the EMR system (or acquiescing to their unlawful access) unlawfully accessed stored communications.

### III. Due Process

The Supreme Court has clearly affirmed that the U.S. Constitution guarantees a defendant the right to a fair trial. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 145 (2006) (holding "[t]he Constitution guarantees a fair trial through the Due Process Clauses…"). In fact, the Court has gone as far to say that the Due Process Clause of the Fifth Amendment may require reversal of a criminal conviction where the governmental action involved "shocks the conscience" and offends "canons of decency and fairness*." Rochin v. California*, 342 U.S. 165, 169, 172, (1952); *see also United States v. Napier*, 787 F.3d 333, 341 (6th Cir. 2015) (citing *United States v. Russell*,

411 U.S. 423, 432 (1973) (suggesting outrageous government conduct outside the grand jury process can result in dismissal on Due Process grounds if such conduct violates "fundamental fairness" or is "shocking to the universal senses of justice")).

IV. **Argument**

Defendant asks the Court to suppress all the Government's evidence following its February 8, 2019, search warrant given that Wright's actions violated his right to privacy under the Fourth Amendment. Defendant is also entitled to dismissal, with prejudice. That is, Wright's intentional and affirmative misrepresentations to secure a second search warrant has deprived Defendant of a fair trial, such that her actions "shock[] the conscience". Failing suppression or dismissal, Defendant submits that a *Franks* hearing is appropriate because Wright knowingly and intentionally falsified statements that were necessary for the Government to establish the probable cause it required for a second search warrant.

**A. Defendant's Right to Privacy Under the Fourth Amendment was Violated**

**i.** *Tipton and Hall were acting as government agents making their warrantless search a violation of the Fourth Amendment*

The Sixth Circuit has developed a two-part test for determining when a "private" person acts as the government's agent. *United States v. Powell*, 836 Fed. Appx. 391, 394-95 (6th Cir. 2020) (citing *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985)). First, the police must instigate, encourage, or participate in the search. *Id.* Second, the individual must "engage[] in the search with the intent of assisting the police in their investigative efforts." *Id.* (citation omitted). The defendant must establish both prongs before the Fourth Amendment applies. *Id.* The Sixth Circuit has affirmed:

> [S]ome bare level of contact between the person and the police isn't enough. A person will not be acting as a police agent merely because there was some antecedent contact between that person and the

> police. Likewise, where the intent of the party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution, the party isn't the government's agent. And there is no seizure within the meaning of the fourth amendment when an object discovered in a private search is voluntarily relinquished to the government.

*Id.*

Here, there is no doubt that Tipton and Hall were acting as government agents. First, agents instructed Hall to utilize Defendant's username and password to access eClinicalWorks, a program for which the Government lacked a warrant. Yet more, at the time both Tipton and Hall were approached by the Government, a search warrant had already been issued and an initial search of the Defendant's medical practice occurred on February 8, 2019. Realizing their failure to obtain a warrant for eClinicalWorks, task force agent Wright, and others, instructed the two (2) employees to supplement the initial search, directing the two (2) employees to search eClinicalWorks for emails and patient records that, not only exceeded the reach of the existing search warrant, but that spanned far greater than the patients charged in the indictment. Simply put, Wright instructed Tipton and Hall to search Defendant's private eClinicalWorks emails and patient records to supplement the Government's initial unsuccessful search in the hopes of collecting evidence to use to criminally prosecute Defendant.

Tipton and Hall also testified that they would not have searched Defendant's private emails and patient records if not instructed to by Wright. Indeed, the two (2) confirmed they were intimidated by Wright and complied with her instructions to assist her investigation in order to diminish their culpability by confirming what was said by each of them.

In sum, Wright acquiesced to the unlawful actions of Tipton and Hall when she was made aware that employees were unlawfully accessing protected health information without a warrant. Specifically, Wright received notes from Tipton which were directly taken from the EMR software,

copied them, placed them in her file, and omitted her actions from her report and subsequently the affidavit. The notes were so specific as to prescriptions, dates of treatment, and medical conditions that any reasonable person would know they were taken directly from a medical record.

Accordingly, Tipton and Hall were acting as government agents when they executed the warrantless search of Defendant's eClinical email and patient records, under the direction of Wright. *See e.g., United States v. Hardin*, 539 F.3d 404 (6th Cir. 2008) (finding apart manager was acting as an agent of the government where the idea to enter the defendant's dwelling under the pretext of an "emergency" was "without a doubt" a police officer's idea); *see also Powell,* 836 Fed. Appx. at 395-98 (collecting cases where a private person was acting as a government agent). Defendant's Fourth Amendment right to privacy was therefore violated and all the evidence following this unlawful search must be suppressed.

> ii. ***Even if the search by Tipton and Hall were "private", there was an absence of veracity and reliability supporting the second search warrant***

The Fourth Amendment mandates that "no Warrants shall issue but upon probable cause…" U.S. Const. amend. IV. The requirement of "probable cause" is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

Where information from a confidential informant ("CI") is used to support a finding of probable cause, a court must analyze the "veracity", "reliability", and "basis of knowledge" in determining whether to execute a search warrant. *See Id.*; *see also United States v. McIntosh*, 109 Fed. Appx. 65, 68 (6th Cir. 2004). The Supreme Court has characterized this approach as assessing the "totality of the circumstances", and in *Illinois v. Gates*, 462 U.S. 213, 230-21 (1983), the Court explained:

> "Veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of [a CI's] report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case. . . . Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Id.*

A particularly important factor that the Sixth Circuit turns to is whether a CI has a proven track record of providing reliable information to law enforcement. *See McIntosh,* 109 Fed. Appx. at 69-70 (adding "[d]ecisions from the Supreme Court and this Court, both before and after *Gates*, indicate that an informant's record in providing information that ultimately led to arrests and/or convictions is highly instructive in assessing his reliability.") (citing *McCray v. Illinois*, 386 U.S. 300, 302-03 (1967) (informant had provided information more than fifteen times and his information had led to "numerous arrests and convictions); *United States v. Set*a, 669 F.2d 400, 403 (6th Cir. 1982) (informant's prior information had led to "several arrests and convictions"); *United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999) (informant had provided information 26 times in the past, and in each instance, the information was correct)). In *McIntosh,* the Sixth Circuit observed "the track record of the CI in this case weighs significantly in favor of the affidavit's reliability." *Id.* Specifically, the Court found that information from the CI had previously led to ten (10) different arrests of drug suspects, ten prior search warrants, and corroborated information on 15 drug traffickers. *Id.*

Here, Tipton and Hall have no record of providing reliable information to law enforcement, heavily cutting against a finding of "veracity" and "reliability". *See McIntosh*, 109 Fed. Appx. at 69-70 (holding a proven track record weighs significantly in favor of reliability). An inference of "veracity" and "reliability" is then further undermined by the fact that neither Tipton nor Hall

provided detailed personal observations of criminal activity undertaken at Defendant's medical practice in their initial statements. *Cf. Id.* (finding "[a]nother factor weighing in favor of a finding of probable cause is that, like the affidavit in Allen, the affidavit herein was based on the CI's personal observation, with details, of criminal activity undertaken at a particular location.").

As Tipton and Hall testified, they were all too eager to assist Wright in order to minimize their culpability in this matter. Against the backdrop of their motives, the issues raised with "veracity" and "reliability" should have prevented a second search warrant based on the information they provided.

### iii. *The Good Faith Exception Does Not Prevent Suppressing the Evidence Obtained by Tipton and Hall or the Evidence Obtained Under the Second Search Warrant*

The Supreme Court has held that the exclusionary rule, which suppresses illegally obtained evidence, does not apply where the evidence was discovered pursuant to a search warrant that was issued in good faith. *United States v. Leon,* 468 U.S. 897, 922 (1984) (concluding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion"). Accounting for the absence of good faith, the Supreme Court has acknowledged four (4) exceptions to the good-faith rule: 1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or 4) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id*. at 905, 914-15, 922-23; *see also United States v. Helton*, 314 F.3d 812, 823-24 (6th Cir. 2003).

Here, the good faith exception is inapplicable. Regarding the initial search by Tipton and Hall, there was no search warrant to authorize their unlawful search of Defendant's eClinical

system. The good faith exception therefore does not apply. *See Leon,* 468 U.S. at 922 (recognizing the good faith exception only applies where there is a search warrant). Regarding the latter search executed under the second search warrant, Wright purposefully acted in bad faith, intentionally falsifying and fabricating statements so that the Government could obtain a second search warrant. Accordingly, the good faith exception cannot save evidence obtained as a result of the second search warrant. *See e.g.*, *United States v. Rush*, 808 F.3d 1007, 1011-13 (4th Cir. 2015) (holding good faith exception inapplicable where *"*the search was unconstitutional due to the intentional decision of Sergeant Winkler to tell Defendant that there was a search warrant, even though he knew that his statement was untrue."*).

Taking a closer look at *Rush*, the Fourth Circuit drew a distinction between cases where the good faith exception was applied for negligence or reasonable reliance on faulty information, compared to instances where good faith was inapplicable because of a "deliberate lie". *Id*. Because the *Rush* Court found officers deliberately lied to obtain a search warrant, it held "[t]he good-faith exception, therefore, would apply in this case *only* if the officers held an objectively reasonable belief that it was lawful to conduct the search after lying about the existence of a warrant." *Id.*: *see also United States v. Shaw*, 707 F.3d 666 (6th Cir. 2013) (excluding evidence obtained where officers misrepresented, they had a warrant to search a neighboring property).

This Court can flatly conclude that no officer could hold an objectively reasonable belief that it is lawful to obtain a search warrant by lying about how evidence establishing probable cause was obtained. *See Rush,* 808 F.3d at 1012 (excluding evidence where a reasonably well-trained officer would have known that a search was illegal). Accordingly, the evidence resulting from the unconstitutional and unlawful search warrant must be excluded.

B. **Defendant's Right to a Fair Trial Has Been Violated**

Defendant has been deprived of his right to a fair trial. Wright's actions have allowed the Government to obtain significant evidence against Defendant that the Government would not otherwise be in possession of. Besides the obvious affront to fairness: prejudicial evidence that the Government has used at trial to try to obtain a conviction, Defendant has suffered further prejudice by his counsel having to invest time and funds into reviewing, analyzing, and rebutting evidence that should never have been discovered in the first place.

But Defendant is not the only one who has suffered from Wright's actions. The patients whose HIPPA rights[2] were violated by Tipton's and Hall's unlawful search have also had their rights infringed. Not to mention, the countless other patients whose records were obtained by the Government following its unconstitutional breach in the first search and unlawful and unconstitutional second search warrant. By having Tipton and Hall violate unlawfully access stored communications, Wright's actions have also made both of them a party to a crime. 18 U.S.C. 2701-2710.

Refocusing on Defendant, though, the last time he raised the negative financial impact the Government's underhanded actions caused, the Court stated, "Defendant does not claim that his limited resources have affected his representation in this case or his ability to prepare for trial." See ECF. 212, at 15-16. Defendant remains unwilling to specifically identify how the Government's continued efforts have hindered his ability to prepare for trial because, if he were to do so, this would unearth pressure points the Government can further exploit. That said, this trial has gone on for over a month costing Defendant significantly. A majority of the Governments

---

[2] See U.S. Department of Health & Human Services, *Individuals' Right under HIPAA to Access their Health Information 45 CFR § 164.524* (Jan. 23, 2020), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html#:~:text=With%20limited%20exceptions%2C%20the%20HIPAA,care%20providers%20and%20health%20plans. ("The regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), which protect the privacy and security of individuals' identifiable health information and establish an array of individual rights with respect to health information, have always recognized the importance of providing individuals with the ability to access and obtain a copy of their health information.").

presentation of evidence focused on messages unrelated to patients in the indictment, obtained unlawfully. This has cost Defendant significantly and diverted time and resources that would have been used to more fully defend the actual counts of the indictment.

As a result of the coercion of employees leading to an unlawful search, omitting her receipt of notes from Tipton, and the Government's failure to provide messages between Tipton, Hall and Wright until the eve of trial, Defendant was prevented from discovering and raising this issue earlier in a motion to suppress. Had he done so, the Jury may not have been subjected to days of testimony regarding information derived from the unlawful search. Defendant was deprived of the time and ability to engage in the following actions:

- challenge the original search warrant (not issued for eClinicalWorks) because the agents instructed employees to access eClinicalWorks without a warrant for the EMR system,
- subpoena phone records of Tipton or Hall,
- obtain forensic analysis of eClinicalWorks to understand the extent of the intrusion,
- interview witnesses regarding the unlawful intrusion,
- obtain the testimony of Wright prior to trial to understand the extent of the intrusion,
- obtain rough notes of the interview of Ms. Tipton and Ms. Hall,
- challenge the introduction of evidence related to patients outside the indictment on a different basis,
- challenge the original search warrant (not issued for eClinicalWorks) because the agents instructed employees to access eClinicalWorks without a warrant for the EMR system,

16

Had Defendant possessed the information improperly omitted from reports, this trial would have been a very different trial. Defendant respectfully asks the Court to recognize his right to a fair trial has been infringed by the Government, and dismiss the second superseding indictment against him, with prejudice. *See United States v. Vickers,* 683 Fed. Appx. 393, 396 (6th Cir. 2017) (recognizing the "outrageous government conduct" defense supporting dismissal of an indictment is appropriately applied where it is used to challenge outrageous government conduct and not to advance an entrapment defense).

### C. Defendant Requests a *Franks* Hearing

Failing suppression or dismissal, Defendant requests the Court hold a *Franks* hearing. To obtain a *Franks* hearing, Defendant must (1) "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit," and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting *United States v. Young*, 847 F.3d 328, 348-49) (6th Cir. 2017)) (cleaned up); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Where an omission is claimed, the Defendant must make "a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis removed). When determining whether a false statement or material omission is necessary, a court must set aside the statement and determine if the rest of the warrant affidavit contains sufficient content to find probable cause. *Id*. If the affidavit supports a finding of probable cause without the statement, no hearing is required. *Id.*; *see also Franks*, 438 U.S. at 171-72.

To start, it is important to note the Sixth Circuit has "held that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)); *see also United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008). Here, Wright affirmatively misrepresented in her report that she obtained information about emails and patient records strictly through Tipton's memory and recall. In doing so, she deliberately chose to fail to disclose that she acquired these emails and patient records from instructing Tipton and Hall to unlawfully access this information from Defendant's eClinical system. The unlawful nature of Tipton's and Hall's actions are only further reinforced by the fact they amount to a violation of HIPPA.[3] Based on the foregoing, Defendant has satisfied the first requirement for a *Franks* hearing. *See e.g., Bennett*, 905 F.2d at 934 (conducting a *Franks* hearing where affiant had lied by claiming an informant told him he had seen several bags of marihuana and marihuana paraphernalia at defendant's property).

Next, if the Court excises the false statements from Special Agent Esslinger's affidavit, the probable cause needed to sustain a search warrant is entirely lacking. Specifically, statements relating to eClinicalWorks emails and patient records that Wright falsely claimed Tipton provided from memory must be removed. This is because eClinicalWorks is an independent and separate system than the medical records that the Government originally obtained. This means that without Wright unlawfully directing Tipton and Hall to search Defendant's eClinicalWorks system, Wright and Esslinger would have absolutely no knowledge to create probable cause to obtain their second search warrant, allowing them to search Defendant's eClinicalWorks system. Defendant has

---

[3] See U.S. Department of Health & Human Services, *Individuals' Right under HIPAA to Access their Health Information 45 CFR § 164.524* (Jan. 23, 2020), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html#:~:text=With%20limited%20exceptions%2C%20the%20HIPAA,care%20providers%20and%20health%20plans.

therefore satisfied the second requirement for a *Franks* hearing. *See e.g., Bennett,* 905 F.2d at 934-35.

Accordingly, Defendant has satisfied the requirements for the Court to hold a *Franks* hearing.

V.  **Conclusion**

For these reasons, Defendant respectfully asks the Court to grant his motion and afford Defendant the relief requested.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: March 9, 2023

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
Michigan Bar No. P73179
*Counsel for Defendant Ghearing*
1441 West Long Lake Road, Ste 310
Troy, MI  48098
T: (248) 644-6326
RWChapman@ChapmanLawGroup.com

Dated: March 9, 2023

/s/ *Meggan B. Sullivan*
Meggan B. Sullivan, Esq.
Tennessee Bar No. 33067
*Counsel for Defendant Ghearing*
424 Church Street, Ste. 2000
Nashville, TN  37219
T: (615) 457-0449
MSullivan@ChapmanLawGroup.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the parties involved.

/s/ *Meggan B. Sullivan*
Meggan B. Sullivan, Esq.
Tennessee Bar No. 33067
*Counsel for Defendant Ghearing*
424 Church Street, Ste. 2000
Nashville, TN 37219
T: (615) 457-0449
MSullivan@ChapmanLawGroup.com