## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Case No. 2:19-cr-00010

       District Judge William L. Campbell, Jr.

GILBERT R. GHEARING,

       Defendant.

_____

## DEFENDANT'S MOTION FOR NEW TRIAL
## Oral Argument Requested

_____

Defendant Gilbert Ghearing, M.D. ("Dr. Ghearing"), by and through counsel,

Ronald W. Chapman II, and Meggan B. Sullivan, files this Motion for New Trial

under Fed. R. Crim. P. 33. For the reasons set forth in his supporting brief, below,

Dr. Ghearing respectfully asks this Court to grant his Motion and Order a New Trial.

       Respectfully Submitted,
       CHAPMAN LAW GROUP

Dated: May 11, 2023       /s/ *Ronald W. Chapman II*
       Ronald W. Chapman II, Esq., LL.M. (P73179)
       Meggan B. Sullivan, Esq. (33067)
       *Counsel for Defendant Ghearing*
       1441 West Long Lake Road, Ste 310
       Troy, MI 48098
       T: (248) 644-6326
       RWChapman@ChapmanLawGroup.com
       MSullivan@ChapmanLawGroup.com

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL

### I.    Background

Dr. Ghearing was a physician who was appropriately licensed to practice medicine in the State of Tennessee. Doc. 164, at 1. He also held a DEA registration, permitting him to prescribe controlled substances as authorized by the Controlled Substances Act (CSA). While practicing, he operated "Ghearing MD, Family Medicine and Obstetrics", which was a medical clinic located in Celina, Tennessee. *Id.* at 2. He also managed two (2) other medical clinics, one in Jamestown, Tennessee, and another in Celina, Tennessee, and worked at three (3) local hospitals and four (4) local nursing homes. *Id.*

The Government indicted Dr. Ghearing on twenty-six (26) Counts of health care fraud, claiming that he knew pharmacies billed TennCare for controlled substances prescriptions that he unlawfully prescribed to patients. *Id.* at 5-10. Dr. Ghearing was also incited on thirty-five (35) Counts of unlawful prescribing, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. *Id.* at 10-13. The Government also charged him with obstruction of justice, in violation of 18 U.S.C. § 1503, as well as adding a charge under 18 U.S.C. § 1519, claiming that he altered patient medical records to obstruct the Government's investigation. *Id.* at 14-16.

A month-long trial ensued, and the jury found Dr. Ghearing guilty on Counts 1s-6s, 9s-10s, 12s-14s, 17s-33s, 35s, 43s, 45s-46s, 48s, 50s-55s, 57s-59s, 61s-63s,

while acquitting him on Counts 7s-8s, 11s, 15s-16s, 34s, 36s-42s, 44s, 47s, 49s, 56s, 60s. Doc. 260. Dr. Ghearing now files this Motion for New Trial under Fed. R. Crim P. 33, challenging his conviction.

## II.    LEGAL ANALYSIS

"The governing principle in the Court's acting on a motion for new trial is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order new trial." *Davis by Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990). A trial court's grant of a new trial is reviewed under an "abuse of discretion" standard. *See United States v. Taylor*, 176 F.3d 331, 335 (6th Cir. 1999).

## III.    ARGUMENT

There are five (5) separate reasons why this Court should grant Dr. Ghearing's Motion under Fed. R. Crim. P. 33 and grant him a new trial. First, the evidence was insufficient to convict him for health care fraud given that he did not execute or devise a scheme to defraud, nor did he possess the requisite intent to defraud under 18 U.S.C. § 1347. Second, the Court issued a deliberate ignorance instruction, leading the jury to convict Dr. Ghearing for negligence or carelessness, undermining the Supreme Court's decision in *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022). Third, the Government violated Dr. Ghearing's Fourth Amendment right to privacy,

obtaining significant and prejudicial evidence related to Eclinical Works. Fourth, the Government repeatedly referenced overdoses related to patients that were not indicted, preying on jurors' emotions, and influencing the outcome of trial. Fifth, the Government's extensive use of "other acts" evidence, which was inadmissible, and affected the outcome of trial.

**1. THE EVIDENCE WAS INSUFFICIENT TO CONVICT DR. GHEARING OF HEALTHCARE FRAUD BECAUSE HE NEVER EXECUTED OR DEVISED A SCHEME TO DEFRAUD AND BECAUSE HE LACKED THE REQUISITE INTENT TO DEFRAUD**

To commit health-care fraud, one must "knowingly and willfully execute[], or attempt[] to execute, a scheme or artifice to defraud any health care benefit program" or fraudulently obtain "any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services." *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017) (citing 18 U.S.C. § 1347). This means that the Government must prove beyond a reasonable doubt that the defendant "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *Id.* (citing *United States v. Agbebiyi*, 575 F. App'x 624, 634 (6th Cir. 2014) (quoting *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009))).

4

Here, the Government failed to prove that Dr. Ghearing executed or devised a scheme or artifice to defraud, while also failing to prove he possessed the required intent to defraud.

### a. Dr. Ghearing Did Not Execute or Devise a Scheme or Artifice to Defraud

At trial, the Government argued that Dr. Ghearing committed healthcare fraud because he *knew* pharmacies were billing TennCare for the unlawful prescriptions he issued to patients. Yet, even if this were true, the Government failed to prove he executed or devised a scheme to defraud, as required under § 1347. 18 U.S.C. § 1347.

To defraud, one must deprive something, ordinarily money, from someone, usually by making a materially false statement. *Persaud*, 866 F.3d at 380. In prescribing controlled substances, Dr. Ghearing never made a statement on the propriety of his prescriptions. He never billed TennCare, or any other health care benefit program. Even at trial, Tara Anderson never testified that she was involved in a scheme with Dr. Ghearing to defraud TennCare. What's more, Dr. Ghearing never deprived anyone of their property because he never received payment for his prescribing of controlled substances; not from TennCare or any other health care benefit program.

Even so, the Government will likely point out that Dr. Ghearing was a TennCare provider and so he signed an agreement to only submit medically

necessary claims for reimbursement. Doc. 164, at 4. But as proven at trial, it was the pharmacies and pharmacists who submitted Dr. Ghearing's prescriptions to TennCare. Under the Controlled Substances Act (CSA), these pharmacies and pharmacists have a "corresponding responsibility" to only fill controlled substance prescriptions that are issued in the course of professional practice for a legitimate medical purpose. 21 C.F.R. § 1306.04(a). In fact, under § 1306.04(a), pharmacists **must** refuse to fill controlled substance prescriptions *solely* on the basis of "red flags" that *may* suggest unlawful prescribing. *See George Pharmacy, Inc.; Decision and Order*, 87 Fed. Reg. 21,145 (2022) (finding a pharmacy violated its corresponding responsibility because it filled prescriptions with unresolved "red flags"). Furthermore these "red flags" include the ones identified at Dr. Ghearing's trial.

As a DEA-registered physician, Dr. Ghearing *knew* of this "corresponding responsibility" to refuse to fill his prescriptions, defeating any claim that he sought to execute or devise a scheme to defraud TennCare. *Cf. United States v. Hunt*, 521 F.3d 636, 640, 645-46 (6th Cir. 2008) (finding physician executed a scheme to defraud where he caused his associate, who had no duty to independently assess the propriety of claims, to bill Medicare for ultrasounds that had not been medically necessary).

## b. Dr. Ghearing Did Not Possess the Necessary Intent to Defraud

In *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006), the Second Circuit held there was insufficient evidence to support the "intent to defraud" necessary for a mail fraud conviction. *Id.* at 157-159. There, mail fraud charges stemmed from the defendant's receipt, through the mail, of portions of the money that contractors paid for "no-show" hours. *Id.* (noting the indictment charged the defendant with using the mail to defraud and to obtain the property of the contractors). On appeal, the Government argued there was sufficient evidence to support the defendant's mail fraud conviction because "the contractors would never have issued checks for the no-show hours had they known that a portion of the money would be received by [] [the defendant], since doing so would have exposed them to criminal liability for unlawful payments to an employee representative under 29 U.S.C. § 186(a)." *Id.* The Court, however, rejected the Government's argument, claiming that the contractors had "received all they bargained for[]" because the Government failed to prove the contractors would *never* have issued checks for the no-show hours in the absence of the defendant's misrepresentation. *Id.* (holding "…the contractors received all they bargained for, and [] [the defendant's] conduct did not affect an essential element of those bargains. Without more, the evidence is insufficient to show the requisite intent to harm.").

7

Like in *Novak*, TennCare "received all they bargained for" with the pharmacies that filled Dr. Ghearing's prescriptions. That is, as part of their participation with TennCare, these pharmacies must "…use their education and professional judgment in all aspects of dispensing".[1] This requirement falls in line with pharmacies' existing duty under § 1306.04(a). 21 C.F.R. § 1306.04. Because TennCare received "all they bargained for" (i.e., controlled substance prescription issued by pharmacies using their professional judgment), there is insufficient evidence to show the requisite intent to defraud to sustain Dr. Gheraing's conviction for health care fraud. *See Novak*, 443 F.3d at 157-59.

Accordingly, the evidence was insufficient to sustain Dr. Ghearing's conviction for health care fraud under § 1347 and the Court should order a new trial on these counts.

**2. THE DELIBERATE IGNORANCE INSTRUCTION GIVEN TO THE JURY RESULTED IN DR. GHEARING BEING CONVICTED FOR NEGLIGENCE OR CARELESSNESS AND THEREFORE VIOLATES THE SUPREME COURT'S DECISION IN *RUAN***

Whether referred to as deliberate ignorance or willful blindness, in *Global-Tech Appliances, Inc. v. SEB S.A.*, the Supreme Court clarified the test for willful blindness is:

> (1) the defendant must subjectively believe that there is a high probability that a fact exists; and

---

[1] *Division of TennCare Pharamcy Provider Manual*, at 28 (March 9, 2022), available at https://www.tn.gov/content/dam/tn/tenncare/documents/PharmacyProviderManual.pdf.

(2) the defendant must take deliberate actions to avoid learning of that fact.

563 U.S. 754, 769-70 (2011) (holding "[w]e think these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence").

As it relates to the deliberate ignorance jury instruction, such an instruction may only be used where a defendant claims a lack of knowledge and the facts and evidence support an inference of deliberate ignorance (i.e., willful blindness). *United States v. Gowder*, 841 Fed. Appx. 770, 783 (6th Cir. 2020). This means that a defendant must have taken deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. *Global-Tech Appliances*, Inc., 563 U.S. at 769-70 (distinguishing recklessness as a defendant who merely knows of a substantial and unjustified risk of such wrongdoing and negligence as a defendant who should have known of a similar risk but, in fact, did not). Still, even where such an inference may be made, the Sixth Circuit has cautioned that deliberate ignorance jury instructions must be used sparingly because of the heightened risk of a conviction based on mere negligence, carelessness, or ignorance – and this caution holds even where the Pattern Jury Instructions that are used distinguish deliberate ignorance from negligence. *See United States v. Daneshvar*, 925 F.3d 766, 782 (6th Cir. 2019).

9

Here, the Court issued a deliberate ignorance instruction to the jury despite defense counsel's objection. In so doing, the Court instructed the jury that if Dr. Ghearing deliberately ignored a high probability that he was prescribing outside the usual course of professional practice without a legitimate medical purpose, then you may find he knew that he was prescribing controlled substances outside the usual course of professional practice without a legitimate medical purpose. This instruction should not have been given because it undermines the Supreme Court's decision in *Ruan*, allowing the jury to convict Dr. Ghearing for "sloppy" prescribing (i.e., negligence, carelessness), and because there were no facts or evidence supporting an inference that Dr. Ghearing was deliberately ignorant.

Pain is not like a broken leg, torn muscle, or tumor; objective tests, and even physical examinations, can neither prove nor disprove the existence of pain. And although doctors can use their intuition and experience to guide them as to when and how much pain medication is appropriate, *there is no magic formula*. All this to say, the practice of pain medicine remains an elusive field of endeavor, and therefore it is implausible, if not outright impossible, for a physician to ignore a high probability that he was prescribing without *any* legitimate medical purpose.

In recognizing the imprecision involved with pain medicine and prescribing, the Supreme Court issued its landmark decision in *Ruan*. There, the Court held that to convict a physician under § 841(a), the Government must prove that he *both*

10

knowingly and intentionally dispensed or distributed a controlled substance, as well as knowingly and intentionally prescribed that controlled substance outside the course of professional practice not for a legitimate medical purpose. *Ruan*, 142 S. Ct. at 2375. To instruct the jury otherwise, such as charging deliberate ignorance, fails to comport with the *Ruan* decision, empowering the jury to convict a physician for mere negligence or carelessness. *See United States v. Anderson*, 2023 U.S. App. LEXIS 9080, at *37-38 (6th Cir. Apr. 17, 2023) ("Yet, the second element does not depend on perceiving or ignoring probabilities. [] [Defendant] either understood and intended to prescribe[] controlled substances without a legitimate medical purpose in the usual course of professional practice, or he did not. That is, the [deliberate ignorance] instruction does not further clarify that both elements require the 'knowledge or intent' mens rea.") (White H.N. dissenting).

*Ruan's* bar on the deliberate ignorance instruction for unlawful prescribing cases is even more illuminating when one considers the evolution of the instruction.

The first case to approve the instruction was *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993). *See* Sixth Pattern Jury Instruction 2.09 Deliberate Ignorance, Committee Commentary 2.09, at 20 (March 1, 2023). There, the defendant was charged with conspiring to possess cocaine with intent to distribute and distributing cocaine. *Id.* at 345. The Sixth Circuit upheld the use of the

instruction, finding there was evidence of deliberate ignorance in the record. *Id.* at

350-51. The Court noted:

> First, defendant himself testified that although he transported $ 800,000 in cash in two duffle bags from Detroit to Miami, he was unaware that the bags contained the moneys because he never looked in them. Second, defendant also testified that although he was present in Pepe Nunez's home when Nunez and Dortch began arguing about drugs and money, he never heard their argument, even though he was standing on the other side of an open archway from Nunez and Dortch, at least for a short period of time before he began playing Nunez's piano. Defendant testified that he did not hear the argument over the piano. However, Dortch testified that the argument had been underway for approximately one-half hour before defendant began playing the piano.

*Id.*; *see also United States v. Mari*, 47 F.3d 782, 783 (6th Cir. 1995) (using

deliberate ignorance instruction where defendant was pulled over while driving a

truck that contained cocaine); *see United States v. Prince*, 214 F.3d 740, 745-46,

759-62 (6th Cir. 2000) (upholding deliberate ignorance instruction where the

defendant falsely represented to individuals that he was "bonded with" the U.S.

Bankruptcy Court and that this enabled him to buy assets involved in bankruptcies

which he could then sell for a sizeable profit.).

*Lee* and *Mari*, drug trafficking cases, involving the distribution of cocaine,

and *Prince,* a fraud case, premised upon definite false statements[2], are cases that *can*

---

[2] The government established at trial that individuals could not purchase property from the bankruptcy court as was represented by Defendants. *Prince*, 214 F.3d at 745.

support an inference of deliberate ignorance (i.e., a high probability of wrongdoing and who can almost be said to have actually known the critical facts). *See Global-Tech Appliances*, Inc., 563 U.S. at 769-70. It is therefore unsurprising that the Sixth Circuit's support of the deliberate ignorance instruction first began with these cases. Cases like these, however, are different from unlawful prescribing cases under § 841(a) – and significantly so.

As raised, pain medicine is an imperfect science and there is no magic formula to support when and if a controlled substance prescription is necessary. This imprecision is now recognized by the Supreme Court in the *Ruan* decision. *See Ruan*, 142 S. Ct. at 2375. To continue to use deliberate ignorance instructions in physician prescribing cases fails to acknowledge the imprecision in pain medicine and prescribing, and disrespects the *Ruan* decision.

Here, at all times, Dr. Ghearing *believed* he was prescribing his patients controlled substances for a legitimate medical purpose. Indeed, as Dr. Murphy testified, there was a clear physician-patient relationship between Dr. Ghearing and the patients he prescribed controlled substances to. Dr. Murphy also indicated that the patients identified in the thirty-five (35) unlawful prescribing Counts, Doc. 164, at 10-13, presented with genuine symptoms and complaints that justified the controlled substances prescribed by Dr. Ghearing. For instance, Patient D.G., who was a complex patient, suffered from a long history of seizures and ongoing

intractable pain, resulting from a fracture in his foot that refused to heal. To address D.G.'s seizures, Dr. Ghearing prescribed Clonazepam and Klonopin, also prescribing him Percocet to address his ongoing pain. The point being, Dr. Ghearing's patients were suffering from *genuine* symptoms and pain that were ruining their lives and impairing their ability to function day-to-day. This led Dr. Gheairng to believe the medications he prescribed were for a legitimate medical purpose.

The Court should not have given the jury a deliberate ignorance instruction. In violating *Ruan*, the instruction invited the jury to find Dr. Ghearing guilty, not because he *knowingly* and *intentionally* prescribed controlled substances for no legitimate medical purpose, but because he adopted "sloppy" practices when prescribing (i.e., he was negligent or careless). *See Daneshvar*, 925 F.3d at 782. The Court should therefore grant Dr. Ghearing's Motion and order a new trial for the unlawful prescribing counts.

### 3. DR. GHEARING'S FOURTH AMENDMENT RIGHT TO PRIVACY WAS VIOLATED BY THE GOVERNMENT LEADING TO THE DISCOVERY AND USE OF PREJUDICIAL EVIDENCE

This issue was raised during trial and the Court held a hearing to further investigate. Doc. 249. Dr. Ghearing reasserts that his Fourth Amendment right to privacy was violated when, Task Force Officer Rebecca Wright, directed Amber Hall

14

and Cheyanne Tipton, two (2) employees of Dr. Ghearing's, to unlawfully access[3] Dr. Ghearing's electronic medical records and obtain the information needed for the Government to secure a search warrant of Eclinical Works. This unlawful activity should have led the Court to suppress all the Government's evidence following its February 8, 2019, search warrant.

The Fourth Amendment only protects against "governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). However, where a private individual is acting as a "government agent", the Fourth Amendment's protections surrounding privacy attach. *See United States v. Lichtenberger*, 786 F.3d 478, 484 (6th Cir. 2015) (affirming "[t]he protections of the Fourth Amendment do not apply to a search or seizure effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." (quotations and citations omitted)).

To determine when a "private" person acts as the government's agent, the Sixth Circuit has developed a two (2) part test. *United States v. Powell*, 836 Fed.

---

[3] Unlawful access of stored communications is a crime. 18 U.S.C. § 2701-2710.

Appx. 391, 394-95 (6th Cir. 2020) (citing *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985)). First, the police must instigate, encourage, or participate in the search. *Id.* Second, the individual must "engage[] in the search with the intent of assisting the police in their investigative efforts." *Id.* (citation omitted).

Here, Tipton and Hall were acting as government agents. Specifically, at the time both Tipton and Hall were approached by the Government, a search warrant had already been issued and an initial search of Dr. Ghearing's medical practice had occurred on February 8, 2019. Realizing their failure to obtain a warrant for Eclinical Works, Task Force Agent Rebecca Wright, and others, instructed the two (2) employees to supplement their initial search, directing Tipton and Hall to search Eclinical Works for emails and patient records that, not only exceeded the reach of the existing search warrant, but that spanned far greater than the patients charged in the Indictment.

Following this unlawful and unconstitutional search, Wright received notes from Tipton which were directly taken from the EMR software, copied them, placed them in her file, and omitted her actions from her report and affidavit the Government used to obtain its second search warrant. Tipton's notes were so specific as to prescriptions, dates of treatment, and medical conditions that any reasonable person would know they were taken directly from a medical record.

Both Tipton and Hall were therefore acting as government agents. *See e.g.,*
*United States v. Hardin*, 539 F.3d 404 (6th Cir. 2008) (finding apart manager was
acting as an agent of the government where the idea to enter the defendant's dwelling
under the pretext of an "emergency" was "without a doubt" a police officer's idea);
*see also Powell*, 836 Fed. Appx. at 395-98 (collecting cases where a private person
was acting as a government agent). The Court should have therefore suppressed all
the Government's evidence following its February 8, 2019, search warrant. *See*
*United States v. Leon*, 468 U.S. 897, 922 (1984).

Accordingly, the Court should grant Dr. Ghearing's Motion and order a new
trial for all counts of the indictment.

## 4. THE PROSECUTOR'S REPEATED REFERENCES TO PATIENT OVERDOSES INFLUENCED THE OUTCOME OF TRIAL

Where a prosecutor makes an improper statement, reversal is appropriate if
the resulting impropriety is "flagrant". *United States v. Eaton*, 784 F.3d 298, 309 (6th
Cir. 2015). Four (4) factors are used to assess whether the resulting impropriety is
sufficiently "flagrant" to warrant reversal. *Id.* These include: "1) whether the conduct
and remarks of the prosecutor tended to mislead the jury or prejudice the defendant;
2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks
were deliberately or accidentally made; and 4) whether the evidence against the
defendant was strong." *Id.* (quotations and citations omitted). When analyzing these
four (4) factors, the challenged statements by the prosecutor are examined "within

17

the context of the trial to determine whether such comments amounted to prejudicial error." *Id.* (quotations and citations omitted).

The Government may charge a defendant with the unlawful dispensation and distribution of controlled substances resulting in death and serious bodily injury. *See* 21 U.S.C. § 841(a)(1), and (b)(1)(C); *see e.g., United States v. Brown*, 2023 U.S. App. LEXIS 3316 (6th Cir. Feb. 9, 2023). The Government either chose not to do so here, or the grand jury refused to indict Dr. Ghearing on these charges. Instead, the grand jury only indicted Dr. Ghearing for the unlawful distribution of controlled substances, in violation of § 841(a)(1). Doc. 164, at 13. At trial, however, the Government made repeated references to patient overdoses that resulted in patient deaths. These intentional and repeated references were improper and greatly prejudicial, requiring reversal under the four (4) factors identified above.

> a. *The Prosecutor's Remarks Regarding Patient Overdoses Leading to Death Were Improper*

"The grand jury is vested with the *exclusive* authority of setting the criminal charges in an indictment." *United States v. Thompson*, 515 F.3d 556, 565 (6th Cir. 2008). Here, after considering all the Government's evidence, the grand jury sought to impose two (2) substantive charges: health care fraud (§ 1347) and the unlawful distribution of controlled substances (§ 841(a)(1)). The grand jury therefore thought there was insufficient evidence to indict Dr. Ghearing for the death or serious bodily injury of a patient under § 841(b)(1)(C). In so doing, the grand jury acknowledged

18

that Dr. Ghearing was not a causal factor in any patient deaths. Because of this, any evidence or discussion of a patient's overdose and death was improper.

To be sure, the Supreme Court has made clear that if evidence fails to establish a defendant was an independently sufficient cause of a victim's death or serious bodily injury, he cannot be held responsible for the victim's death. *See Burrage v. United States*, 571 U.S. 204, 218-19 (2014) (holding "…at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U. S. C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.").

The Sixth Circuit has acknowledged the *Burrage* decision and has held that it adds the additional element of causation to find a defendant responsible for a victim's death. *See Baker v. United States*, 848 Fed. Appx. 188, 189-90 (6th Cir. 2021) (noting "…in *Burrage*, the Court held that, to convict a defendant under 21 U.S.C. § 841(b)(1) for a drug crime in which 'death or serious bodily injury results from the use of such substance,' the government must show that the use of the drug is a but-for cause of the death, rather than merely a contributing cause.").

These decisions represent a clear dividing line for when evidence of deceased patients is probative and thus admissible under Fed. R. Evid. 403, and when such evidence is not probative and therefore inadmissible. Consider *United States v.*

*Hofstetter*, where the Eastern District of Tennessee held that evidence of deceased patients, while prejudicial, was highly probative and therefore admissible under Fed. R. Evid. 403. 2019 U.S. Dist. LEXIS 211492, at *17-18 (E.D. Tenn. 2019). The decision rests on an earlier Eleventh Circuit case, *United States v. Bourlier*, 518 F. App'x 848, 855-56 (11th Cir. 2013). There, the Court observed that, like in *Hofstetter*, the grand jury had indicted the defendant for the death of his patients, making evidence and testimony on patient death and bodily injury admissible at trial. *Id.* at *18-21 (clarifying that its holding is limited to instances where there is sufficient causation between the deaths of patients and a physician's prescribing).

The prosecutor's statements on Dr. Ghearing's patient's overdoses and resulting deaths was therefore improper.

### b. The Prosecutor's Remarks on Patient Overdose and Death Were "Flagrant" Requiring a New Trial

The four (4) factors to assess whether a prosecutor's remarks were "flagrant" are analyzed below. *See Eaton*, 784 F.3d at 309.

### 1. Whether the Remarks Tended to Mislead or Prejudice Dr. Ghearing

Prosecutor's must be careful in prosecuting doctors for unlawfully prescribing opioids given "jurors' emotions and fears associated with the current drug epidemic that is reported daily in our newspapers and which threatens the very fabric of our society." *United States v. Solivan*, 937 F.2d 1146, 1157 (6th Cir. 1991); *see also United States v. Barlin*, 686 F.2d 81 (2d Cir. 1982) (finding prosecutor improperly

appealed to the jury's passion and emotion in characterizing its job as "the one occasion on which you have a duty to do something about the drug traffic in our community."). It is difficult to imagine a more inflammatory statement than raising that a patient died from an overdose resulting from controlled substances that a defendant prescribed. That is exactly what the prosecutor did here, however. On their own, these statements are highly prejudicial. *See Hofstetter*, 211492, at *17-18 (observing "[t]o be sure, as the Court stated in its prior order, evidence of patient deaths has the potential to be significantly prejudicial".); *see Bourlier*, 518 F. App'x at 856 (recognizing the prejudicial impact of deceased patients). In the context of the ongoing fear and stigma associated with the opioid epidemic, the prosecutor's comments here are especially insidious.

## 2. Whether the Remarks Were Isolated or Extensive

Here, the prosecutor repeatedly referenced the patient overdose deaths, making the remarks extensive. While the prosecutor's first reference to these overdoses and deaths may fairly be characterized as spontaneous and innocent, any such inference is cast in doubt by the prosecutor's repeated references to this evidence at trial. *See Davis v. Zant*, 36 F.3d 1538, 1548-49 (11th Cir. 1994) (holding "…the spontaneity and innocence of this first misstatement is cast in doubt by the prosecutor's closing argument which contained repeated and clearly intentional misrepresentations of a similar nature."). This led the Eleventh Circuit to hold that

the prosecutor's misrepresentations, made on at least five (5) separate occasions, were extensive to the point that they infected the fairness of trial. *Id.*

### 3. Whether the Remarks Were Deliberate or Accidentally Made

The Government's response opposing Dr. Ghearing's Motion in *Limine* to exclude evidence of patient overdoses and deaths resolves this inquiry. *See* Doc. 136. The prosecutor's repeated references were calculated and intentional.

### 4. Whether the Evidence Against the Defendant was Strong

Here, the evidence against Dr. Ghearing was not strong, and this why the Government made repeated references to non-indicted patient overdoses and death. Indeed, Dr. Murphy testified that Dr. Ghearing issued controlled substance prescriptions in the usual course of professional practice and for a legitimate medical purpose. Even the patients that the Government called to testify supported that Dr. Ghearing's prescriptions were issued to address ongoing and intractable legitimate complaints of pain. Rather than overwhelming evidence, the Government relied on a deliberate ignorance jury instruction and unindicated patient overdoses and death to wrongfully convict Dr. Ghearing.

Accordingly, the prosecutor's statements on Dr. Ghearing's patient's overdoses and deaths were sufficiently "flagrant" to the point they infected the trial and the Court should grant Dr. Ghearing's Motion and order a new trial on all counts.

## 5. INADMISSIBLE "OTHER ACTS" INFLUENCED THE JURY'S VERDICT AFFECTING DR. GHEARING'S SUBSTANTIAL RIGHTS

### a. Standard of Review and Background

When a district court abuses its discretion and improperly admits evidence at trial, reversal is required if the admitted evidence affects a defendant's "substantial rights". *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). To affect a defendant's substantial rights, the evidence must be prejudicial to the point that it affected the outcome of trial. *See United States v. Allen*, 716 Fed. Appx. 447, 452 (6th Cir. 2017).

At trial, the Government built its case on evidence that was unrelated to patients listed in the Superseding Indictment. This evidence should have been held inadmissible because the Government failed to prove its admissibility as "other acts" evidence under Rule 404(b). *See* Ex. A. But even if the Court disagrees and finds this was intended as "other acts" evidence, it still should have been held inadmissible because its probative value is *significantly* outweighed by its prejudicial impact.

### b. Argument

Conduct that falls outside the government's indictment constitutes "other acts" evidence and its admissibility is governed by Rule 404(b). *See United States v. Lattner*, 385 F.3d 947, 955-58 (6th Cir. 2004). The Sixth Circuit has put forth a well-established framework for deciding whether to admit Rule 404(b) evidence. *Id.*

First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*Id.* (citation omitted).

Here, the Government sent Dr. Ghearing a notice seeking to introduce into evidence emails and other evidence concerning unindicted patients of Dr. Gheairng's. Ex. A. While the Government claimed this evidence should be admissible under Rule 404(b) because it proves either "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, *Id.* at 4, the Government failed to elaborate and explain *specifically* why the evidence proves "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Without more, to identify the specific reason why the evidence is admissible, the evidence should have been held inadmissible at trial.[4] *See United States v. Zelinka*, 862 F.2d 92, 99 (6th Cir. 1988) (holding evidence

---

[4] Especially because, at trial, the Government failed to connect any of the unindicted patients it called to a larger scheme. The Government did not introduce these patients' medical records, did not call these patients to testify, did not have their expert testify about them. The only reasonable inference to draw is that the Government introduced this evidence to try to prejudice Dr. Ghearing – as further outlined below – by showing the jury unfavorable emails that paint him in a poor light. And this is not one of the reasons why "other acts" evidence is admissible under Rule 404(b). *See* Fed. R. Evid. 404(b) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

of the amount and purity of cocaine to prove its "distributable form" inadmissible because the government's explanation on admissibility merely parroted the language of Rule 404(b), providing no explanation of how this particular evidence relates to any matter in issue). This is especially true here, because, if a prosecutor fails to provide reasonable notice, such as *why* and *how* evidence will be used, it deprives the defendant of a fair opportunity to "meet it". *See* Fed. R. Evid. 404(b)(2).

This evidence related to unindicted patients should have also been excluded because its probative value is *heavily* outweighed by its unfairly prejudicial effect. *See Lattner*, 385 F.3d 947, 955-58 (holding "[f]inally, the district court must determine whether the 'other acts' evidence is more prejudicial than probative.") (citation omitted). And the cases cited by the Government in its notice, trying to support admissibility clearly demonstrate why evidence related to unindicted patients had little to no probative value in this case. *See* Ex. A, at 4.

In *United States v. Hardy*, 643 F.3d 143 (6th Cir. 2011), the defendant was indicted on **one** (1) count of possession with the intent to distribute fifty (50) grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *Id.* at 146. The Court held evidence of the defendant's prior crack sales was admissible under Rule 404(b) to prove the defendant's intent. *Id.* at 150-53.

In *United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004), the defendant was charged with **one** (1) count for conspiracy to possess with the intent to distribute in

excess of one hundred (100) kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 598-600. There, the Court upheld the admissibility of prior bad acts evidence, in part, because "a jury could reasonably have concluded that Trujillo committed the prior bad acts based upon Campos", making the evidence admissible to prove plan, opportunity, motive, and unexplained wealth. *Id.* at 605-06.

In *United States v. Myers*, 123 F.3d 350 (6th Cir. 1997), the defendant was indicted on *one* (1) count for possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 354. The Court found that testimony of the defendant's prior drug transactions were admissible under Rule 404(b) to prove his intent. *Id.* at 362-63.

In *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), the defendant was indicted on *one* (1) count for conspiring to distribute cocaine and to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841, 846. *Id.* at 1073. There, while the Court acknowledged conspiracy tapes are admissible to prove intent under Rule 404(b), it found that the tapes admitted at trial were erroneously admitted, reversing the defendant's conviction because the error was not harmless. *Id.* at 1078-79.

Breaking course, in *United States v. Robison*, 904 F.2d 365 (6th Cir. 1990), the defendant was indicted on *two* (2) counts relating to the unlawful distribution of

controlled substances. *Id.* at 367 (charging the defendant with conspiracy to maintain a place to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1982) (count I) and unlawful possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (count II), among other non-drug counts). The Court held that testimony from a co-conspirator discussing previous occasions where she sold drugs to the defendant was admissible under Rule 404(b) because it concerned the defendant's intent. *Id.* at 368-69.

In *United States v. Rodriguez*, 882 F.2d 1059 (6th Cir. 1989), the grand jury returned a two (2) count indictment charging the defendant with *two* (2) counts: one (1) for knowingly, intentionally, and unlawfully possessing with the intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one (1) for knowingly, intentionally, and unlawfully distributing cocaine also in violation of 21 U.S.C. § 841(a)(1). *Id.* at 1061. The Court held that evidence that the same house was used for a prior drug transaction was admissible to show the defendant's plan. *Id.* at 1064-65.

In *United States v. Feinman*, 930 F.2d 495 (6th Cir. 1991), the defendant was indicted on *two* (2) counts for or conspiring to possess marijuana and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. *Id.* at 497-98. The Court held that evidence of the

defendant's prior involvement in marijuana shipments was admissible to show his knowledge. *Id.* at 499.

Here, Dr. Ghearing was indicted on ***twenty-six*** (26) counts for health care fraud in violation of 18 U.S.C. § 1347, involving six (6) unique patients. Doc. 164, at 9-10. He was also indicted on ***thirty-five*** (35) counts for the unlawful distribution of controlled substances, involving seven (7) unique patients. *Id.* at 10-13. While in the cases referenced by the Government, the indictments were significantly limited, making the probative value of evidence falling outside the indictments greatly beneficial, here, the sheer volume of counts undermines any probative value of evidence related to unindicted patients.

At the same time, the emails and evidence related to these unindicted patients was greatly prejudicial to Dr. Ghearing, as the evidence was intended to paint him as a dispassionate doctor who took advantage of many, if not all, of his patients. And this evidence was made even more prejudicial because it indicated to the jury that Dr. Ghearing's patients suffered overdoses and died. *See Hofstetter*, 211492, at *17-18 (observing "[t]o be sure, as the Court stated in its prior order, evidence of patient deaths has the potential to be significantly prejudicial".); *see Bourlier*, 518 F. App'x at 856 (recognizing the prejudicial impact of deceased patients).

The Court should have excluded this evidence because its *de minimis* probative value, if it holds any, in the face of the **sixty-one** (61) counts identified above, is *greatly* outweighed by its prejudicial effect on Dr. Ghearing.

## IV.   CONCLUSION

For these reasons, Dr. Ghearing respectfully asks this Court to grant his Motion and order a new trial on all guilty counts of the Superseding Indictment.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: May 11, 2023          /s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
Michigan Bar No. P73179
*Counsel for Defendant Ghearing*
1441 West Long Lake Road, Ste 310
Troy, MI  48098
T: (248) 644-6326
RWChapman@ChapmanLawGroup.com


Dated: May 11, 2023          /s/ *Meggan B. Sullivan*
Meggan B. Sullivan, Esq.
Tennessee Bar No. 33067
*Counsel for Defendant Ghearing*
424 Church Street, Ste. 2000
Nashville, TN  37219
T: (615) 457-0449
MSullivan@ChapmanLawGroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the parties involved.

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
Michigan Bar No. P73179
*Counsel for Defendant Ghearing*
RWChapman@ChapmanLawGroup.com

30