# EXHIBIT A



U.S. Department of Justice

United States Attorney
Middle District of Tennessee

*719 Church Street*  *Telephone (615) 736-5151*
*Suite 3300*  *Fax (615) 401-6626*
*Nashville, Tennessee 37203-6940*

August 9, 2022

**VIA ELECTRONIC MAIL**

Ronald W. Chapman II
Chapman Law Group
1441 West Long Lake Rd., Ste. 310,
Troy, MI 48098

Meggan Sullivan
Chapman Law Group
3510 Woodmont Blvd,
Nashville, TN 37215

Re:   FRE 404(b) Notice in the matter of <u>United States v. Gilbert R. Ghearing</u>
      Case No. 2:19-CR-00010 (U.S.D.C. M.D. Tenn.)

Dear Counsel,

    The information below is provided in compliance with Judge Campbell's Scheduling Order (DE 87) and Federal Rule of Evidence 404(b)(3) requiring notice to the defendant of intent to use such evidence.

    Federal Rules of Evidence 404(b) (hereafter Rule 404(b)), allows the government to introduce evidence for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

    The United States provides notice that it will seek to introduce the following evidence which has been disclosed previously as potential 404(b) in discovery letters dated July 10, 2019, September 4, 2019, and October 4, 2019, as intrinsic and direct evidence of intent to commit the crimes charged but, alternatively, as permissible Rule 404(b).[1]

(1)   Testimony of clinic employees who will testify about their observations of patients at defendant's clinic and warnings to defendant that patients were abusing their

---

[1] The evidence described in paragraphs 1 - 7 is also extensively addressed in the United States Motion In Limine No. 1 (DE 98).

medications, diverting medications, overdosing, failing pill counts, and failing drug screens; that patients were discharged but then allowed to return and obtain more prescriptions for controlled substances; that employees alerted defendant that some of his patients had been arrested for drug charges; that employees conveyed warnings or complaints from patients' families and friends, medical providers, and pharmacists about defendant's prescribing and about dangerous drug combinations; and/or that they conveyed that patients were engaged in aberrant behaviors inside and outside the clinic;

    a. Note this will likely include reference to patients who died. The United States will not argue or claim defendant's actions led to the deaths of these patients, but may elicit testimony about defendant's reaction to the deaths.

(2) Testimony of pharmacists and pharmacy employees and other medical professionals who will testify that they warned defendant and/or his staff about patients or prescriptions, including dangerous combinations of controlled substances; that they warned that patients had been arrested, warned that patients were in rehabilitation or substance abuse recovery and/or on suboxone and should not be prescribed controlled substances; and/or that they refused to fill prescriptions written by defendant, including the "holy trinity" combination, and that one referred defendant to the department of health and the Drug Enforcement Administration. This will include documentation of the referral as well as a number of faxes sent to defendant's clinic about different warnings and prescriptions;

    a. Note this will likely include reference to patients who died. The United States will not argue or claim defendant's action led to the deaths patients, but may elicit testimony about decisions to no longer fill prescriptions following the deaths.

(3) Testimony of patients and of family members and friends of patients – listed in the indictment – who contacted defendant or defendant's clinic or attended visits with the patients. These witnesses will testify about defendant prescribing controlled substances, observations in the clinic, that patients overdosed, abused, or were addicted to their medications, and that defendant failed to heed warnings that patients were addicted or abusing their medications or were in recovery;

(4) Testimony by an expert who will testify regarding defendant's prescribing to an undercover agent and/or confidential source, as documented in video and audio recordings; experts who will testify regarding the volume of prescribing and patterns of prescribing from data derived from Tennessee's Controlled Substances Monitoring Database ("CSMD") and about the volume of prescribing and patterns of prescribing from Medicare and TennCare claims data;

(5) Data and Summary Charts: CSMD data and Medicare and TennCare claims data as well as charts that reflect prescribing patterns and volume summarized and compiled from that data;

(6) Emails: internal messages of clinic employees to defendant about patients, including about overdoses, abuse of medications, failure to appear for pill counts or drug screens, failure of drug screens and pill counts, and arrests; about patients who were stealing medications from other patients; about pharmacists who warned defendant or stopped filling prescriptions; about rehabilitation centers or detoxification hospitals who asked defendant to stop prescribing controlled substances; and about the discharging of patients who then returned and continued to receive controlled substances;

(7) Undercover and confidential source videos and testimony: audio and video evidence taken in defendant's clinic that reflect visits with defendant in which controlled substances were prescribed;

(8) The testimony of a physician who previously worked with Dr. Ghearing and took over his patients in the Marshall Islands. He will testify that Dr. Ghearing directly expressed a view that a physician's controlled substances prescribing, and combinations of controlled substances, should not be regulated by the government and that if a patient overdoses on the medications, it is the patient's problem;

(9) A local news report interview of Dr. Ghearing where he states he does not prescribe a lot of controlled substances and it is all out of town doctors;

(10) Communications from insurance companies notifying Dr. Ghearing of patients on multiple controlled substances, seeing multiple prescribers, or on combinations of drugs;

(11) Clinic records reflecting phone messages documenting patient families calling to warn defendant and records reflecting pill counts and drug screens, seized via search warrant;

(12) Prescriptions written by the defendant, including for patients who are not specifically referenced in the indictment;

(13) Letter from the Tennessee Department of Health regarding overprescribing;

(14) Text messages of clinic employees discussing patient aberrant behaviors and actions of the defendant regarding controlled substance prescribing;

(15) That clinic staff took steps to protect themselves from patients who were aggressive, including carrying a gun and mace behind the counter.

With the exception of the Rule 1006 summary charts, the evidence described above has been provided in discovery to defendant. Summary charts will be promptly disclosed for review but are based on underlying CSMD and Medicare and Medicaid claims data that has already been

disclosed.[2]

"Rule 404(b) is an inclusionary, rather than exclusionary, rule." *See, e.g.*, *United States v. Lattner*, 385 F.3d 947, 956 (6th Cir. 2004); *see also United States v. Trujillo*, 376 F.3d 593, 605–06 (6th Cir. 2004). The Rule allows the government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). The Rule contains a non-exhaustive list of proper purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In this case, the evidence the government seeks to admit is offered for permissible purposes. The evidence will be offered for the purposes explicitly enumerated in Rule 404(b): proof of intent, knowledge, plan and scheme, motive, opportunity, and preparation.

There is sufficient evidence the acts described occurred through the direct testimony of those who observed the acts, as well as through supporting documentation, medical records, prescriptions, text messages, video recordings, emails and faxes showing the notifications to defendant. The evidence is highly relevant to the material issues and tends to show that defendant knew his patients were misusing his prescriptions, and yet he continued to prescribe in the same manner. In addition to evidence of knowledge and intent, the evidence of a consistent, ongoing pattern of overprescribing in the wake of repeated warnings also tends to show that defendant had a plan and scheme, motive, opportunity, and preparation in his prescribing of controlled substances.

The Sixth Circuit has consistently held that 404(b) evidence is admissible to prove intent. *See Trujillo*, 376 F.3d at 605-06; *United States v. Myers*, 123 F.3d 350, 362–63 (6th Cir. 1997); *Merriweather*, 78 F.3d at 1078; *United States v. Hardy*, 643 F.3d 143, 150-51 (6th Cir. 2011) (stating that 21 U.S.C. § 841(a)(1) distribution is a specific intent crime and 404(b) evidence can be properly used to show a defendant acted with specific intent). Additionally, the proposed evidence about defendant's other patients or prescriptions will be offered to prove his plan and scheme, motive, opportunity, and preparation.

The similarity between defendant's acts in the charged conduct and defendant's other simultaneous prescribing habits – issuing controlled substance prescriptions outside the course of professional medical practice or without legitimate medical purposes and lacking medically necessity – provides the basis to establish the admissibility of the latter pursuant to Rule 404(b), *i.e.*, to show plan, scheme, motive, opportunity, and preparation. *See United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991) (prior involvement in marijuana shipments admissible to show knowledge); *United States v. Robison*, 904 F.2d 365, 368 (6th Cir. 1990) (prior drug sales probative of cocaine distribution conspiracy); *United States v. Rodriguez*, 882 F.2d 1059, 1064-65 (6th Cir. 1989) (evidence that same house was used for prior drug transaction admissible to show plan). Indeed, when a prior act involves the same scheme or a similar "modus operandi," as the present offense, the Sixth Circuit has found the evidence to be probative. *See United States v. Thompson*, 690 F. App'x 302, 308 (6th Cir. 2017).

---

[2] The United States once again respectfully requests defendant turn over reciprocal discovery material. We have not received any discovery to date.

Here, the evidence described *supra*, shows defendant's intent to commit the charged crimes with respect to the patients and prescriptions in the charged counts and establishes plan and scheme, motive, opportunity, and preparation that defendant consistently prescribed controlled substances to these patients without objectively assessing their need for controlled substances, and in disregard of the risks his prescribing practices may have on his patients. As such, the evidence is indicative of defendant's plan, motive, scheme, opportunity, and preparation to treat the patients in the indictment, not for a legitimate medical purpose or their medical benefit but so he could keep them coming back to his practice. That, too, is evidence of motive – the defendant's financial gain.

In addition to the evidence listed above, and depending on the defenses raised, the United States may seek to admit evidence regarding potential witness tampering and attempts to flee as evidence of consciousness of guilt. Courts admit "spoliation evidence, including evidence that a defendant attempted to bribe ... a witness," because such spoliation evidence shows "consciousness of guilt." *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir.1986); *see also United States v. Anderson*, 333 Fed.Appx. 17, 24 (6th Cir.2009). In *United States v. Poulsen*, "The district court was aware of this distinction and clearly stated how Poulsen's "prior acts" were admissible under Rule 404(b): 'Evidence of witness tampering was admissible as an 'other purpose' under Rule 404(b) because it 'tends to establish consciousness of guilt without any inference as to the character of the spoliator.'" 655 F.3d 492, 508–09 (6th Cir. 2011).

Here, defendant has repeatedly reached out to the patients listed in the indictment in attempts to get them to return to see him at his new clinic in Crossville, Tennessee, despite the fact that most of the patients live an hour and a half from Crossville. Likewise, it is our understanding that defendant communicates with these patients via Facebook, including "liking" their pictures. The United States believes these actions are potentially coercive and done in an attempt to influence these witnesses.

Likewise, defendant attempted to flee prosecution. Law enforcement executed a search warrant on the clinic in February 2019. In April and May 2019, the defendant informed others that he planned on closing his medical practice and that he planned to leave the United States and would not return. On May 15, 2019, the same day that agents served two of his employees with grand jury subpoenas for testimony, and three months following the execution of a search warrant at his medical practice, the defendant booked a one-way ticket to the Marshall Islands, set to depart on Sunday, May 19, 2019. Flight is generally admissible as evidence of guilt, and juries are given the power to determine how much weight should be given to such evidence. *See United States v. Dillon*, 870 F.2d 1125, 1127–28 (6th Cir. 1989) (allowing evidence and instruction on flight where defendant fled after learning a co-conspirator had been subpoenaed to testify before the grand jury.)

The defendant's "consciousness of guilt" activities show a continuing pattern and plan of deception, and further supports the government's position that his conduct was at all times knowing and intentional.

The evidence described in the paragraphs above are admissible to prove intent, knowledge,

Page **5** of **6**

Case 2:19-cr-00010   Document 269-1   Filed 05/11/23   Page 6 of 7 PageID #: 2541

plan, scheme, motive, preparation, opportunity, and method of operation. Nothing is inflammatory about the evidence. Should accident or mistake be raised as a defense, then lack of accident and absence of mistake are also permissible purposes for the admission of such evidence. This evidence is relevant and admissible. The probative value is not substantially outweighed by any danger of unfair prejudice.

Sincerely,

MARK H. WILDASIN
United States Attorney for the
Middle District of Tennessee

*/s/ Sarah K. Bogni*
Sarah K. Bogni
Juliet Aldridge
Assistant United States Attorneys
110 9th Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151