IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 2:19-cr-00010 |
| v. | ) | |
| | ) | Judge Campbell |
| | ) | |
| GILBERT GHEARING | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL

The United States of America, by and through undersigned counsel, files this response in opposition to Defendant Gilbert Ghearing's *Motion for New Trial*. (D.E. 269.) The Defendant has not established (and cannot establish) his heavy burden of showing that the jury's verdict is against the manifest weight of the evidence, or that this Court committed a substantial legal error.

In short, the evidence at trial established that the Defendant unlawfully prescribed controlled substances, and that he continued to do so after being warned by his staff, other medical professionals, patients, and patient family members that his patients were abusing and misusing controlled substances, including suffering overdoses and addiction. The Defendant caused pharmacies to submit fraudulent claims to insurance plans for medically unnecessary prescriptions. The Defendant then obstructed justice by altering the medical records of patients in the indictment in an attempt to provide valid reasons for his prescribing. The Defendant's arguments neither show that the jury's verdict was unreasonable nor show that this Court committed a substantial legal error during the proceedings. Therefore, the Defendant's Motion should be denied.

## I. BACKGROUND

The Defendant was charged by Indictment on June 12, 2019, with 26 counts of health care fraud, in violation of 18 U.S.C. § 1347, and 35 counts of unlawful distribution of a controlled

substance, in violation of 21 U.S.C. § 841. (D.E. No. 19).    On October 17, 2022, a Superseding Indictment charged Defendant with two additional counts of obstruction of justice, at Counts 62 and 63, in violation of 18 U.S.C. §§ 1512 and 1519. (D.E. 164). On February 14, 2023, trial began. During the course of the trial, the jury heard from multiple witnesses, including the Defendant's former patients and family members of patients, law enforcement, former employees of the Defendant's medical clinic, a medical expert, a pharmacy expert, a DEA diversion witness, a Tennessee Department of Health witness, pharmacists, other medical professionals who treated Defendant's patients, Medicare and TennCare (Medicaid) program witnesses and experts, electronic medical records witnesses, experts on medical recordkeeping practices, and bank record and data analysts. The defense also presented several witnesses—a medical expert, the Defendant's wife and office manager, former employees, physicians and nurses who previously worked with Defendant, and the Defendant himself.

On March 28, 2023, a jury returned a split verdict, convicting the Defendant of 45 counts (including health care fraud, unlawful distribution, and obstruction of justice counts). (D.E. 260). The jury acquitted Defendant on a total of eighteen counts. (*Id.*) On May 11, 2023, the Defendant filed a motion, pursuant to Federal Rule of Criminal Procedure 33, related to his convictions on Counts 1-6, 9-10, 12-14, and 17-26 for health care fraud and Counts 27-33, 35, 43, 45, 46, 48, 50-55, 57-59, and 61 for unlawful distribution.[1] The Defendant argues that he is entitled to the extraordinary remedy of a new trial for the following five independently sufficient reasons: (1)

---

[1] The jury also convicted the Defendant of obstructing justice and altering records in Counts 62 and 63 of the superseding indictment. (D.E. 260). Although he requests a new trial "on all guilty counts," (Motion for New Trial, DE 269, Page ID# 2534), the Defendant does not raise any challenges to his obstruction convictions. If the Defendant subsequently raises an argument that his convictions in Counts 62 and 63 were against the manifest weight of the evidence or were otherwise infected by a substantial legal error, it will be untimely under Federal Rule of Criminal Procedure 33.

2

insufficient evidence supported his health care fraud convictions; (2) this Court's deliberate ignorance jury instruction ran afoul of the Supreme Court's decision in *Ruan*; (3) this Court committed a substantial legal error in denying his mid-trial motion to suppress evidence and dismiss the indictment; (4) the United States' reference to the overdose deaths of two [of the Defendant's] patients infected the trial with unfairness; and (5) the United States' introduction of "other acts" evidence violated Federal Rules of Evidence 403 and 404(b)(1). The United States addresses each of the Defendant's unavailing arguments in turn.

## II.     LEGAL STANDARD

A fundamental principle in our system of justice is that "[i]t is the jury, not the court, which is the fact-finding body." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944). The jury "weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts." *Id*. "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Id*. Once a jury has fulfilled this function and reached a unanimous verdict, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id*.

A narrow exception to this fundamental principle permits district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). And although Rule 33 itself "does not define 'interest of justice,'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quotations and alteration omitted), case law permits a Rule 33 motion to "be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

3

Such motions "are disfavored, discretionary, and granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019) (quotations omitted); *see also, e.g.*, *Hughes*, 505 F.3d at 592-93; *United States v. Lyimo*, 574 F. App'x 667, 672 (6th Cir. 2014) (describing a new-trial order on these grounds as an "extraordinary remedy"). This demanding standard is not met unless the court finds that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982) (quotations omitted).

Under the rule, "the trial judge . . . take[s] on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). Granting a Rule 33 motion based on the manifest weight of the evidence is therefore appropriate only if the court finds that the jury's verdict was unreasonable. *See Tennant*, 321 U.S. at 35; *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir. 1993); *United States v. Wheat*, 202 F.3d 271, at *1 (6th Cir. 2000) (table). And a "'verdict should not be considered unreasonable simply because different inferences could have been drawn or because other results are more reasonable.'" *Lyimo*, 574 F. App'x at 672 (quoting *Porter v. Lima Mem. Hosp.*, 995 F.2d 629, 635 (6th Cir. 1993)). *Cf. Wood v. Allen*, 558 U.S. 290, 301 (2010) (explaining, in the context of a claim under 28 U.S.C. § 2254, that a state court's determination "is not unreasonable merely because the federal . . . court would have reached a different conclusion in the first instance").

Rule 33 also allows the Court to grant a new trial in the interest of justice if "substantial legal error has occurred." *Munoz*, 605 F.3d at 373. The trial court does not assume the role of the "thirteenth juror" for purposes of this type of challenge, *Id.* at n. 9, and harmless legal errors do

4

not justify the vacatur of convictions under Rule 33. *Cf. United States v. Whittle*, 223 F. Supp.3d 671, 675, 683 (W.D. Ky. 2016). Whether his motion alleges that the verdict is against the weight of the evidence or is infected by a substantial legal error, a defendant bears the "very heavy burden" of proving that a new trial should be granted.[2] *United States v. Tocco,* 200 F.3d 401, 424 (6th Cir. 2000); *United States v. Seago,* 930 F.2d 482, 488 (6th Cir. 1991).

## III.    ARGUMENT[3]

The Defendant's arguments do not warrant a new trial. The jury heard significant evidence concerning the unlawful distribution of controlled substances, health care fraud, and obstruction of justice and was free to draw inferences, assess witnesses' credibility, and interpret that evidence for or against Defendant. Likewise, this Court did not commit a substantial legal error. In an effort to fend off this conclusion, the Defendant simply rehashes unsuccessful arguments he previously made in pretrial (and mid-trial) motions, during objections at trial, in motions for a mistrial, and in Rule 29 arguments at the close of the United States' proof. Accordingly, this Court should deny the Defendant's motion for the following reasons.

### A.  The Manifest Weight of the Evidence Supports the Health Care Fraud Convictions

First, the Defendant challenges the validity of his health care fraud convictions, arguing that "the evidence was insufficient to sustain [his] convictions for health care fraud." (D.E. 269,

---

[2] The Sixth Circuit's decision in *United States v. Burks*, 974 F.3d 622, 627-28 (6th Cir. 2020), provides some helpful context to show how great a burden the defendant bears in advancing a Rule 33 motion on weight of the evidence grounds. There, the Sixth Circuit, in finding that the district court abused its discretion by granting a defendant's Rule 33 motion for a new trial based on the manifest weight of the evidence, noted that its "own research shows that virtually every one of [its] cases dealing with the weight of the evidence involves affirmances of district court denials of new trial motions." *Id.* (compiling cases).

[3] The United States notes that a full trial transcript is not available to the United States at the time of this response. Therefore, citations to trial testimony and evidence are largely based on the good faith memory of trial counsel.

PageID# 2509-13.) The Defendant specifically argues the government failed to prove he committed health care fraud because (1) he never made material false statements about the propriety of his prescriptions, (2) he was not paid by the health care benefit programs for the prescription claims, (3) the government did not prove he committed a scheme or artifice to defraud, given that pharmacists' corresponding duty under the Controlled Substances Act to only fill prescriptions for legitimate medical purposes "defeats any claim" that he sought to defraud health benefit programs, and because (4) the government did not prove his intent to defraud, given that because the health benefit programs "received all they bargained for" with the pharmacies filling his prescriptions. In addition to applying the incorrect legal standard[4] the Defendant's arguments fall woefully short of meeting his heavy burden to demonstrate the jury's verdict on the health care fraud counts is against the manifest weight of the evidence.

For Counts 1-6, 9-10, 12-14, and 17-26, the jury found that the defendant "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347.

_____

[4] As the Sixth Circuit has explained, a Rule 33 motion for a new trial differs from a Rule 29, which challenges the sufficiency of the evidence supporting a defendant's conviction. *Mallory*, 902 F.3d at 596. Specifically, Rule 33 asks whether the trial judge believes the verdict to be against the manifest weight of the evidence while under Rule 29 "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Court should decline the Defendant's invitation to review its Rule 33 challenge under the incorrect legal standard. Moreover, the Defendant has waived a Rule 29 sufficiency challenge by failing to renew his Rule 29 motion after the close of evidence. *United States v. Love*, 553 F. App'x 548, 554 (6th Cir. 2014) ("This Court will not consider challenges to the sufficiency of the evidence if the defendant failed to make a Rule 29 motion for judgment of acquittal at the end of the prosecution's case-in-chief and at the close of the evidence.").

6

The Court instructed the jury on health care fraud:

1. That the Defendant knowingly and willfully executed or attempted to execute a scheme to defraud any health care benefit program or to obtain, by means of false or fraudulent pretenses, representations, or promises any of the money or property in the control of a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services;
2. That the scheme related to a material fact or included a material misrepresentation or concealment of a material fact; and
3. That the Defendant had the intent to defraud.

(Jury Instructions).[5] As the Court correctly instructed the jury, "[t]he law makes no distinction between the weight [the jury] should give to either" direct or circumstantial evidence. (Jury Instructions). The Court also instructed the jury, "[a] jury is allowed to make reasonable inferences, unless otherwise instructed." (*Id.*) Direct evidence of intent to commit fraud is not necessary—circumstantial evidence from which a jury could draw reasonable inferences of intent to commit fraud will suffice. *United States v. Washington*, 715 F.3d 975, 980 (6th Cir. 2013); *see also United States v. Anderson*, 67 F.4th 755, 2023 WL 2966356, at *11 (6th Cir. Apr. 17, 2023) (per curiam) (same). "A jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom. Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007).   And importantly, "[a] defendant is guilty of healthcare fraud if he "contributed to the execution of the scheme with intent to defraud." *Anderson*, 2023 WL 2966356 at *11 (quoting *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008)).

As an initial matter, the Defendant's argument that the government failed to prove the Defendant guilty of committing health care fraud because the pharmacies submitted the claims to Medicare and TennCare, not the Defendant himself, is foreclosed by logic and binding Sixth

---

[5] The Court has not docketed the final jury instructions from trial and counsel relies on the last version emailed to all counsel by the Court's staff.

Circuit precedent. *Anderson*, 2023 WL 2966356 at *11. A defendant who *causes the submission* of false and fraudulent claims to health care programs is just as liable. The Court instructed the jury on "causing an act," which included proving the following beyond a reasonable doubt:

1. That the Defendant caused pharmacies to submit false and fraudulent claims to Medicare and/or TennCare for payment for dispensed controlled substances prescriptions;
2. If the Defendant or another person had committed the act it would have been the crime of health care fraud; and
3. That the Defendant willfully caused the act to be done. (Jury Instructions.)

The Defendant did not object to this instruction. Likewise, the trial testimony of multiple Medicare and TennCare witnesses, clearly demonstrated that without the Defendant's authorization – in the form of the prescriptions he issued – the pharmacies could not have submitted the fraudulent claims to Medicare and TennCare. As the Sixth Circuit recently explained, the Defendant's attempt to stave off his healthcare fraud convictions by deflecting blame towards the pharmacists who actually submitted the prescription claims to Medicare and TennCare, is meritless. *Anderson*, 2023 WL 2966365, at *12 (citing cases).

In *Anderson*, the Sixth Circuit found the evidence was sufficient to convict a defendant of health care fraud and unlawful distribution. *Id.* Just as in this case, the defendant in *Anderson* was a physician charged with unlawful prescribing and health care fraud related to prescriptions written by the defendant, dispensed by pharmacies, and billed by the pharmacies to health care benefit programs. The evidence in *Anderson* mirrors that of this trial. The jury in *Anderson* heard from former employees of the defendant, pharmacists, patients, a medical expert, and witnesses affiliated with Medicare and Medicaid. And just like in this trial, the Medicare and Medicaid witnesses testified about medical necessity and testified that programs do not pay for medications that are medically unnecessary or in violation of state or federal law. The *Anderson* jury convicted

8

the defendant of unlawful distribution and health care fraud counts. Anderson then challenged the sufficiency of the evidence for health care fraud, arguing – just like here – that he could not have engaged in a scheme to defraud because the pharmacies billed for the prescriptions, not him, and he did not profit personally from the payments on the prescriptions. The Appellate Court rejected this argument and found the evidence sufficient such that a rational juror could conclude the defendant was involved in a scheme to defraud, and that defendant knew prescriptions were paid for by health care benefit programs. Likewise, the defendant's personal profit was irrelevant. *Id*.

Just as in *Anderson*, the evidence at trial supports the jury's verdict as to the substantive health care fraud counts relating to prescriptions written by the Defendant and billed by pharmacies. The evidence at trial demonstrated the defendant wrote medically unnecessary prescriptions, did not comply with state and federal laws, and knew they would be billed to Medicare and TennCare. Those health benefit programs relied on the defendant's authorization of these fraudulent prescriptions when it reimbursed the claims underlying the counts of conviction. Viewing these facts in light of all the other evidence and testimony presented at trial, the Defendant's health care fraud convictions were not against the manifest weight of the evidence.

Indeed, an array of evidence introduced at trial supported the jury's verdict. A medical expert, Dr. Carl Christensen, testified at length that the controlled substances prescribed by the Defendant were written outside the usual course of professional practice not for legitimate medical purposes. He testified repeatedly that the substances put the patients at extreme risk of physical harm and at risk of addiction, and that the Defendant should not have prescribed the medications. He likewise testified that the Defendant furthered the addiction of his patients with the prescriptions, and that the prescriptions were not for legitimate medical treatment of the patients.

Stephen Quindoza, a contractor for Medicare, testified that in order for Medicare to pay a

9

claim three key requirements must be present: (1) an eligible beneficiary; (2) an enrolled provider; and (3) a medically necessary item or service. He also testified that when a claim is submitted to Medicare for reimbursement the provider is making the representation the services billed were medically necessary and in compliance with state and federal law. Among other things, he testified that medically necessary means that the medical item or service ordered is reasonable and necessary for the treatment or diagnosis of an illness or injury, is safe and effective, is not for the convenience of the provider or the patient, and is prescribed by a doctor acting in the usual course of professional practice for legitimate medical purposes. He testified that this requirement extends to the ordering provider, regardless of who submits the claim. He testified that the enrollment of a provider includes a signed certification where a provider attests that he will not submit or cause the submission of fraudulent claims. Quindoza introduced as an exhibit just such a certification signed by the Defendant.

Aaron Butler, of the Bureau of TennCare, Tennessee's Medicaid program, testified similarly regarding the rules of the TennCare program. He introduced contracts signed by Defendant where he agreed to the rules of TennCare and agreed that he would not submit or cause the submission of fraudulent claims. Both Quindoza and Butler testified that Medicare and TennCare rely on a trust-based system of physicians ordering items in compliance with the laws.

Joanna Sullivan, a pharmacy expert from a Medicare contractor, testified about prescribing patterns by Defendant to Medicare beneficiaries and red flags that his prescribing was not reasonable and necessary. Sullivan and a Jacob Stroup, law enforcement analyst, introduced summary charts that demonstrated that the vast majority of Defendant's patients receiving controlled substance prescriptions were federal health program beneficiaries. They also linked claims for prescriptions billed by pharmacies to Medicare and TennCare to the counts in the

10

indictment and prescriptions written by the Defendant.

Quindoza and Stroup introduced summary charts that demonstrated the Defendant profited off office visits he billed to Medicare and TennCare where he wrote the prescriptions. A financial analyst introduced bank records and summary charts demonstrating health care benefit programs paid Defendant a million dollars over the course of a little over two years.

Defendant's employees also testified about the volume of Medicare and TennCare patients in Defendant's practice and that they were directed by the Defendant to check patients' insurance and the Controlled Substance Monitoring Database ("CSMD"). Medical record exhibits introduced at trial demonstrated the patient's insurance was listed on the face of the record. Likewise, a witness from the CSMD explained that the CSMD confirms whether a patient fills the prescription and indicates how they paid for it – whether it be private pay, commercial insurance, Medicare, or TennCare. Exhibits introduced at trial showed the patients in the indictment were TennCare or Medicare beneficiaries and used the insurance for their prescriptions.

Defendant claims he "never made a statement on the propriety of his prescriptions." (D.E. 269, PageID# 2510). However, as demonstrated by the testimony of Quindoza and Butler and Sullivan, and the exhibits introduced through them, the prescription itself is a representation by Defendant that the item or service was medically necessary for the patient and in compliance with federal and state law. The evidence at trial established Defendant issued the prescriptions for controlled substances that were billed to Medicare and TennCare.

The Defendant's related argument that there was insufficient evidence to support intent to defraud because Medicare and TennCare supposedly "received all they bargained for," given that pharmacists used their own professional judgment in submitting claims to Medicare and TennCare,

is convoluted and equally without merit.[6] (D.E. 269 at PageID# 2512-13.) The evidence demonstrated that the defendant issued the prescriptions, and Medicare and TennCare would not have paid for them had they known the prescriptions were not medically necessary or not written in compliance with federal or state law, including that they be written by the prescriber for a legitimate medical purpose in the usual course of professional practice.

In sum, the Defendant urges the Court to sit as a thirteenth juror and find the jury's split verdict on his health care fraud convictions to be unreasonable. (D.E. 269 at PageID# 2510-13.) In doing so, the Defendant does not attack the credibility of government witnesses, explain how the evidence was diminished by inconsistencies, or otherwise point out how the evidence preponderates so heavily against the government's verdict that a serious miscarriage of justice may have occurred. Instead, the Defendant merely recycles several arguments about the proof of his intent to defraud and his execution of a scheme to defraud that the Sixth Circuit has already considered (and rejected) in a closely analogous case. *Anderson*, 2023 WL 2966356, at *11-12. In light of these and other facts, the Defendant's Rule 33 motion to vacate his health care fraud convictions should be denied.

**B. This Court Did Not Commit Error by Giving a Deliberate Ignorance Jury Instruction.**

Next, the Defendant claims that the Court committed a substantial legal error warranting a new trial when it instructed the jury on deliberate ignorance, thereby allowing the jury to convict the Defendant on the basis of mere negligence or carelessness. (D.E. 269 at PageID# 2513-19).[7] The Defendant's argument is again foreclosed by binding Sixth Circuit precedent.

---

[6] Aiding and Abetting was also charged and an instruction on same given to the jury.

[7] Defendant challenges the deliberate ignorance instruction as regards the unlawful prescribing counts, but not as it related to the health care fraud counts.

12

Under Rule 33, erroneous or insufficient jury instructions might warrant a new trial, but only if the instructions, "taken as a whole, are misleading or give an inadequate understanding of the law." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998)). The court cannot consider allegedly insufficient instructions "in isolation" but must instead "consider the charge as a whole." *Id.* (quoting *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir. 2000)).

A deliberate ignorance instruction, like the one given in this case, "is appropriate when: (1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance." *United States v. Mitchell,* 681 F.3d 867, 876 (6th Cir. 2011). "Before giving the instruction, the district court therefore must determine that there is evidence to support an inference 'that the defendant acted with reckless disregard of [the high probability or illegality] or with a conscious purpose to avoid learning the truth.'" *Id.* (citing *United States v. Seelig,* 622 F.2d 207, 213 (6th Cir. 1980)).

The Court instructed the jury consistent with the pattern instruction for deliberate ignorance, and in the Defendant's case, there was ample evidence to support an inference. The evidence presented at trial, including patient records, government witness testimony, and the Defendant's own testimony, showed that the Defendant continued to prescribe opioids despite patients' repeated irregular drug screens and other signs of drug abuse, failure to show up to pill counts, and the warnings of everyone around him regarding his prescribing practices. Testimony from the Defendant's staff and some of the pharmacists established that the Defendant failed to respond to calls and heed faxes from pharmacists seeking to resolve concerns about these prescriptions, and that, despite these warnings, the Defendant continued the same prescribing

13

practices about which the pharmacists were trying to warn him.[8] The testimony of his staff and of patient families established that family members called and visited to tell the Defendant about drug abuse and overdoses of their loved ones, but that the Defendant ignored their concerns and continued to prescribe to those patients. The testimony of his staff established that the Defendant instructed staff not to obtain hospital records on a patient who he knew had overdosed. The staff further testified that the Defendant continued to prescribe while ignoring his own medical record documentation reflecting patients had overdosed, failed pill counts and drug screens, reports of patients stealing medications, and that patients had been in rehabilitation or were active drug users. Documents and emails introduced at trial demonstrated the Defendant was aware of warnings regarding dangerous combinations of controlled substances, received training on the dangers, knew he should not prescribe opioids to patients in addiction treatment, and had access to guidelines on prescribing controlled substances that the facts demonstrated he failed to follow.

The Defendant argues that because the deliberate ignorance instruction was given to the jury, there was a "heightened risk" that he was found guilty because of merely negligent conduct. (D.E. 269 at PageID#2513-19). However, the Sixth Circuit has found that the Pattern Jury Instruction for deliberate ignorance, which was adapted in this case, "forecloses the possibility of this error." *United States v. Mari,* 47 F.3d 782, 785 (6th Cir. 1995). The instruction given in the Defendant's case reads, in relevant part:

> But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose and that the defendant deliberately closed his eyes to what was obvious. Carelessness, or negligence, or foolishness on his part is not the same as knowledge, and is not enough to convict. This of course, is all for you to decide.

---

[8] In fact, Defendant testified that repeated emails and text messages written to him or by him demonstrating his guilty knowledge may have actually been someone else using his email or his phone.

(Jury Instructions). The given instruction makes it clear that the standard to be applied by the jury is beyond a reasonable doubt, and that negligence is not enough to convict based on deliberate ignorance. Thus, even assuming, *arguendo*, that there was not sufficient evidence to justify the Court's deliberate ignorance instruction, the error was a harmless one. As the Sixth Circuit stated in *Mari*, "even assuming the district court erred by giving the deliberate ignorance instruction because of lack of evidence, the error was harmless; for '[t]he only way we can conclude that the deliberate ignorance instruction was harmful is if we assume that the jury applied the instruction contrary to its express terms.'" *Mari*, 47 F.3d at 785-786 (quoting *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993)); *see also United States v. Mitchell*, 681 F.3d at 878 n.58 ("[A] deliberate ignorance instruction that accurately states the law will constitute harmless error as long as there is adequate evidence to support the alternate ground for conviction, i.e., that the defendant actually knew of the criminal activity.").   The Sixth Circuit has consistently rejected the argument that a district court lowers the bar for conviction by giving the instruction found at § 2.09 of the pattern instructions. *See, e.g., United States v. Doyle*, 720 F. App'x 271, 279 (6th Cir. 2018) (by advising the jury that negligence was insufficient to convict, "the district court did not lower the burden of proof" by instructing on deliberate ignorance); *United States v. Patel*, 651 F. App'x 468, 472 (6th Cir. 2016) (finding no concern that the jury convicted on the basis of negligence because the district court "clearly presented deliberate ignorance as an alternative to actual knowledge, either of which satisfied the statutory knowledge requirements"); *Mitchell*, 681 F.3d at 877 (rejecting argument that "the concept of deliberate ignorance [was] totally irrelevant to the issue at hand").

Defendant's arguments that the Supreme Court's ruling in *Ruan v. United States*, 142 S.Ct. 2370 (2022) somehow changed this analysis is wrong. Contrary to Defendant's assertions, *Ruan*

did not issue a "bar on the deliberate ignorance instruction." (D.E. 269, PageID# 2516). In fact, right after the jury in this trial was instructed, the Sixth Circuit released a new pattern jury instruction for distribution of a controlled substance by a practitioner. *Sixth Cir. Pattern Jury Instr*. 14.02C. The committee did not reject a deliberate ignorance instruction in the wake of *Ruan*, but rather elected to take "no position" on an instruction because there was not yet any authority in the Sixth Circuit post *Ruan*. Since then, the Sixth Circuit in *United States v. Anderson* found jury instructions that included a deliberate ignorance instruction comported with the requirements of *Ruan*. 2023 WL 2966356, at *7-8.

A number of district courts within the Sixth Circuit have given a deliberate ignorance instruction post *Ruan* and have found the instruction proper under the same charges and similar facts. *See, e.g., United States v. La*, No. 3:22-CR-00163, 2023 WL 2731036, at *4 (M.D. Tenn. Mar. 30, 2023) (finding instruction appropriate where government presented evidence that the doctor deliberately or recklessly disregarded signs his patients abused opioids, including repeated irregular drug screens and warnings by another physician, and "therefore, that he was aware of a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose.") Other district courts outside the Sixth Circuit have agreed. *See, e.g.*, *United States v. Lamartiniere*, No. 18-00087-BAJ-RLB, 2023 WL 2424585, at *4 (M.D. La. Mar. 9, 2023).

Defendant's argument also appears to rely on an assertion that medicine is subjective and, in particular, that the practice of pain medicine is an "elusive field of endeavor" so it is "implausible, if not outright impossible" for a doctor to ignore that he prescribed without any legitimate medical purpose. (D.E. 269, PageID# 2514-2515). This is really an argument that § 841(a)(1) should not apply to doctors at all. *Ruan* made clear that it does. *United States v. Taylor*,

16

No. 21-cr-00013, 2022 WL 4227510, at *2 (E.D. Ky. Sept. 13, 2022) (Van Tatenhove, J.) ("[T]he [*Ruan*] Court implicitly re-affirmed the long-held notion that the CSA criminalizes conduct by doctors, just as it does street dealers and drug traffickers, if they are acting outside the course of professional practice."). Here, the evidence introduced at trial shows the Defendant recklessly or deliberately ignored signs of abuse and misuse and therefore "he was aware of a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose." *La*, 2023 WL 2731036, at *4. Therefore, the deliberate ignorance instruction applied to the facts of this case and the jury was properly instructed.

### C. The Court Did Not Commit a Substantial Legal Error in Denying Defendant's Motion to Suppress Evidence.

Defendant argues he is entitled to a new trial because the Court erred in denying his mid-trial suppression motion, as it relates to the evidence obtained "following its February 8, 2019 search warrant."[9] The Defendant fails to meet his burden to establish "substantial legal error" that merits a new trial in the interest of justice. *Munoz*, 605 F.3d at 373.

The parties briefed the suppression motion and the Court held an evidentiary hearing.[10] The Court heard the testimony of three witnesses, two staff members whose interviews underpinned the warrant affidavit, and the DEA Task Force Officer who conducted the interviews. The Court, after hearing oral argument by the parties, denied the Defendant's motion, stating that: it did "not find that they were providing information to the investigation at the instigation and encouragement or participation of law enforcement in a search of information before the warrant

---

[9] Although the Motion fails to identify the specific warrant, the warrant at issue is the March 14, 2019, search warrant to eClinicalWorks for messages of Defendant's clinic.

[10] As the Defendant has failed to raise any facts or arguments not previously addressed, the United States fully incorporates by reference into this response its Memorandum in Opposition to Suppression and its oral argument on the motion.

17

was issued, nor did they engage in that search with the intent of assisting law enforcement in their investigation efforts. That's based on the testimony of Ms. Hall, Ms. Huddleston and Officer Wright." (D.E. 272, PageID# 2548-49). The Court went on to deny any other suppression issues because they should have been raised pretrial under Fed. R. Crim. P. 12. (*Id*. at 2550).

Defendant's "argument does nothing more than superficially rehash the arguments" Defendant made in his mid-trial suppression motion. *See United States v. Goins*, No. 4:20-CR-380, 2021 WL 6064788, at \*7 (N.D. Ohio Dec. 22, 2021). The Court did not err in denying suppression. There is no new argument or legal basis in Defendant's motion that the Court somehow failed to address in its ruling. Defendant has failed to meet its burden to demonstrate that the ruling amounts to substantial legal error that warrants a new trial in the interest of justice.

### D.  Reference to Patient Deaths Was Not Improper

The Defendant argues that purported references by the United States to overdoses and overdose deaths was improper and therefore the verdict must be overturned in the interest of justice.[11] Contrary to his assertions, the United States did not repeatedly reference the two deaths mentioned during the testimony of former clinic employee Anne Kane or on redirect of pharmacist Michael Griffith.[12] Defendant is not entitled to a new trial.

Assuming the United States did make "repeated" reference to overdose deaths, the Sixth Circuit employs a two-step inquiry to determine whether prosecutorial misconduct has occurred. *See United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008) (citing *United States v. Francis*, 170

---

[11] The Defendant rehashes arguments that have previously been briefed and addressed by the Court. Defendant's Motion to Exclude Deceased Patients (D.E. 106) sought to exclude evidence of patient deaths at trial. The United States responded, opposing the motion. (D.E. 136). The United States incorporates by reference its opposition motion. The Court denied Defendant's motion at a hearing while allowing for contemporaneous objections at trial.

[12] If the Court disagrees with the United States' recollection of the testimony and closing argument, the United States requests leave to order and review the transcripts and supplement this response as necessary.

18

F.3d 546, 549 (6th Cir.1999)). The first inquiry is whether a statement was improper. *See id.* If it was improper, the second inquiry is whether the statement was so "flagrant" as to warrant reversal. *See id.* Four factors are considered in determining whether a statement was flagrant: (1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused. *Id.* at 549-50. In applying each of these factors, the critical question "is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotations and citations omitted).

Because the comments were not improper, the Court can stop its inquiry there. Courts have repeatedly allowed such evidence in similar cases. Testimony that the Defendant was aware that patients who were under his care were dying is classic "red-flag" evidence and is admissible to establish the requisite mens rea in this case. *See*, *e.g.*, *United States v. Schwartz*, 702 F. App'x 748, 756 (10th Cir. 2017) (no error in admission of evidence of patient deaths, where such evidence "was probative of the conspirators' wanton disregard for the drug-abusive tendencies of its patients" and "showed that [the defendant] knew that the clinic's patients were misusing their prescriptions, yet the practice continued to prescribe opioids in irresponsible ways"); *United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 6718489, at *6 (E.D. Tenn. Dec. 9, 2019) ("First, the Court notes its previously announced agreement with the case law of other circuits on this issue, which indicates that evidence of deaths of patients prescribed by a particular defendant is highly probative of that defendant's state of mind . . . Evidence that defendants' patients were dying is probative of whether defendants knew or were deliberately ignorant of the fact that patients were not legitimate pain patients but were seeking pain pills and misusing their

19

prescriptions."). It was thus not improper to elicit testimony regarding patient deaths. Because the comment was not improper, the Court need not consider whether the comment was also flagrant.

Improper or not, the comments were not flagrant and accordingly, the Defendant is not entitled to a new trial. Even where courts find that a prosecutor's comments were improper, the Sixth Circuit requires a finding that an improper prosecutorial comment was "flagrant" to merit a new trial. *United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003), *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 327–28 (6th Cir. 2012). Here, the comments were not flagrant, as demonstrated by the four factors the Sixth Circuit balances. First, the prosecutor's comments did not mislead the jury or prejudice the Defendant, especially in light of the Court's immediate limiting instruction; second, the prosecutor's comments were isolated; third, the comments were not deliberately made to inflame; and fourth, the evidence against the accused was strong.

1. *Not Misleading or Prejudicial*

The statements were not intended to mislead the jury and prejudice the Defendant. Where a curative instruction has been given immediately following an improper comment, the Sixth Circuit had often held that the instruction was sufficient to guard against any prejudice. *See United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994) (explaining that the "first factor [of the balancing test] includes consideration of whether the trial judge gave an appropriate cautionary instruction to the jury[]"); *United States v. Wilson*, 199 F. App'x 495, 498 (6th Cir. 2006) (stating that it was "extremely unlikely" that improper comments swayed the jury where the judge gave an immediate admonishment). Here, the comments did not tend to mislead the jury and prejudice the Defendant. The potential testimony was discussed at length in pretrial filings and with the Court. The United States indicated repeatedly in advance of their testimony that certain patient deaths might be mentioned by witnesses and described the purpose for which it would be appropriate to

20

elicit such testimony. D.E. 143-1 (404(b) Notice); D.E. 136 (U.S. Res. In Opp. To Mot to Exclude Deceased Patients). When, as predicted, it was elicited at trial, the Court issued a limiting instruction as to the jury's limited use of the testimony for the Defendant's state of mind and to not use the death for any other purpose. The Defendant moved for a mistrial, which the Court denied. The United States did not "repeatedly" reference the deaths. And in the circumstance of the testimony of Michael Griffith, only elicited the testimony about a death because the defense opened the door on cross examination. The only time the United States made any comment on a patient death was once in its closing argument to highlight the testimony regarding the Defendant's knowledge that patients were suffering overdoses who had sought his help for addiction and his reaction to a staff member informing him of the overdose. Reference to the Defendant's reaction is precisely in keeping with the Court's limiting instruction to the jury. Therefore, reference to the overdose death to discuss the Defendant's reaction – laughing – was entirely proper and did not tend to mislead the jury and prejudice the Defendant.

Any prejudicial effect was also cured by the Court's final instruction to the jury as to the limited purpose for which they could consider the evidence. The Sixth Circuit has found "that for a curative admonishment to be sufficient, it must be swift and in proportion to the potential harm." *Galloway*, 316 F.3d at 633. Moreover, "juries are presumed to follow their instructions." *United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Here, the Court's instruction was immediate after the testimony that elicited the patient deaths. The comment in closing was in keeping with the instruction.

   2.   *The comment was isolated.*

The Defendant's attempt to turn what were very limited references into pervasive conduct is unpersuasive. When improper comments are limited at trial they are considered isolated. *See*

*Irick v. Bell*, 565 F.3d 315, 326 (6th Cir. 2009) (stating that improper comments were isolated where they were "limited to the rebuttal portion . . . and did not make up an extensive part of [the] argument[]"); *United States v. Shalash*, 108 F. App'x. 269, 280-81 (6th Cir. 2004) (finding that two improper comments during closing argument were isolated); *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (same); *United States v. Bartos*, 51 F. App'x. 957, 964 (6th Cir. 2002) (finding that two alleged improper comments made during *voir dire* and during the evidence portion of a one-day trial were isolated); *cf. United States v. Acosta*, 924 F.3d 288, 306-07 (6th Cir. 2019) (finding that nine statements made over the course of a three-day trial were not isolated).

     *3.  <u>The Comment was Not Made with a Deliberate Plan to Inflame.</u>*

       When determining whether an improper comment was deliberate or accidental, the Sixth Circuit considers whether the comment was made with a "deliberate plan to inflame the jury as opposed to unduly-zealous advocacy." *United States v. Hall*, 979 F.3d 1107, 1121 (6th Cir. 2020) (citations omitted). Another factor considered is how often the comment or theme surrounding the comment was made by prosecutor. *Compare Acosta*, 924 F.3d at 307 (comments deliberate where the prosecutor returned to the improper subjects repeatedly) *with Galloway*, 316 F.3d at 633 (finding one improper comment made during the course of a trial was not deliberate).

       Here, there is no evidence that the prosecutor was attempting to inflame the jury. The reference was to the Defendant's reaction to the news that his patient had overdosed and died the very day after asking for help with her addiction. The reference to an overdose death by the pharmacist, Michael Griffith, occurred on redirect after defense counsel attempted on cross examination to leave the jury with the inference that the pharmacist had turned the Defendant into the Department of Health because of concern that he was himself in trouble, when in reality, it was right after a patient overdosed and died and that is why he reported. These references fit within the

22

purpose for which the Court instructed the jury that they could consider that testimony, for the Defendant's knowledge and intent. A reference to the Defendant's reaction to the patient overdose and death was only made once in the Government's closings. The second death was not mentioned.

### 4. *The Evidence Was Strong*

Throughout the course of the trial, the jury received evidence that the Defendant ignored warnings from multiple sources, including his own staff, his medical records, patients' family members, licensed pharmacists, and his own drug testing, that the drugs he was providing to patients were being misused and abused. Despite these many red flags, he continued to prescribe to the detriment of his patients.

The jury was provided ample evidence that the Defendant knowingly provided prescriptions outside the usual course of professional practice and not for a legitimate medical purpose. That he furthered his patients' descent into addiction while acting indifferently to their suffering and physical deterioration. Accordingly, there was strong evidence that the Defendant acted knowingly or intentionally in prescribing controlled substances outside the usual course of professional practice and not for a legitimate medical purpose and knew or intended that it was unauthorized, and that he knowingly or willfully defrauded Medicare and TennCare by issuing prescriptions that he knew were not medically necessary and intended to be billed to those programs. Defendant is not entitled to a new trial on the basis of the isolated references to deaths.

### E. "Other Acts" Evidence Was Appropriately Admitted

The Defendant moves for a new trial on the basis that the admission of "other acts" evidence at trial affected his substantial rights and was prejudicial to the point of requiring reversal. The Defendant is once again rehashing arguments previously made and rejected by the Court. The Court properly admitted the evidence at trial. The Defendant is not entitled to a new trial.

23

In reviewing the trial court's decision to admit evidence under Rule 404(b), the Sixth Circuit uses a three-part standard. *United States v. Brown*, 147 F.3d 477, 482-83 (6th Cir. 1998). First, the district court's factual finding that the other act occurred is reviewed for clear error. *United States v. Latouf,* 132 F.3d 320, 328 (6th Cir. 1997). Second, the district court's determination, that as a matter of law, evidence of the other act is admissible for a proper purpose, is reviewed *de novo. United States v. Merriweather,* 78 F.3d 1070, 1076 (6th Cir. 1996). The third standard of review, abuse of discretion, is applied to the district court's determination of whether under Fed. R. Evid. 403, the probative value of the other act evidence is substantially outweighed by its prejudicial effect. *United States v. Thomas,* 74 F.3d 676, 679 (6th Cir. 1996).

Defendant's citation to the record on this issue is inaccurate. Defendant continues to rely on the United States' initial 404(b) notice in making its argument that the Government failed to establish a proper purpose for the admission of the evidence. This ignores the United States' Motion in Limine No. 1: To Allow Admission of Intrinsic Evidence or of Evidence of Other Crimes and Acts Pursuant to Federal Rule of Evidence 404(b). (D.E. 98). In that motion and memorandum, the United States described the basis for which the evidence was admissible as intrinsic to the crimes charges and as proper 404(b) to both the unlawful distribution counts and to the health care fraud scheme to defraud. The motion demonstrated the basis for the evidence, the proper purpose for admission, and the probative value versus its prejudicial effect. Defendant failed to respond to the motion.[13] The United States incorporates its memorandum at D.E. 98.

---

[13] The Superseding Indictment (D.E. 164) which describes the charged scheme to defraud – across Defendant's Medicare and TennCare patients – Defendant's practice of continuing to prescribe medically unnecessary prescriptions despite knowledge of overdoses, failure to monitor, signs of addiction, abuse of medications, stealing medications, signs of intoxication in the clinic, failure to drug screen, failed drug screens, failed pill counts, warnings about combinations of substances, and more. The United States presented just such evidence at trial.

24

Likewise, the United States' addressed this evidence in response to Defendant's Motion to Exclude 404(b) at D.E. 107. The United States reiterated the bases for the proper admissibility of the evidence and its probative value. (D.E. 143). The United States incorporates the response. The Court agreed with the United States and found the evidence admissible as 404(b) to "show knowledge, intent, scheme, or plan." (D.E. 152 at PageID# 927.) The Court allowed for contemporaneous objections at trial. Defendant repeatedly objected at trial and the Court overruled the objections, at least once stating on the record the evidence was permissible 404(b) to show the charged scheme to defraud for a number of proper purposes. The Court did not err in admitting the "other acts" evidence and should not disturb the jury's verdict.

## IV.    CONCLUSION

For the reasons stated above, the government respectfully requests the Defendant's Motion for a New Trial be denied.

Respectfully submitted,

THOMAS J. JAWORSKI
Attorney for the United States
Middle District of Tennessee
Acting Under Authority Conferred
by 28 U.S.C. § 515

By:     */s/ Sarah K. Bogni*
Sarah K. Bogni
Juliet Aldridge
Amanda J. Klopf
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone:   615-736-5151

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

By:    _*/s/ Sarah K. Bogni*_
            Sarah K. Bogni
            Assistant United States Attorney